

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 04, 2018.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **CORRIDOR MEDICAL SERVICES, INC.;** | § | **Case No.  18-11569** |
| **CORRECTIONAL IMAGING SERVICES,** | § | **Case No. 18-11570** |
| **LLC; and CMMS LAB, LLC** | § | **Case No. 18-11571** |
| Debtors. | § | **(Chapter 11)** |
| | § | **(Jointly Administered** |
| | § | **under Case No. 18-11569-hcm)** |
| | § | |
| | § | |
| | § | |

### AGREED INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

On December 3, 2018, the Court conducted a hearing (the "Interim Hearing") on the

Debtors' Motion for Use of Cash Collateral (the "Motion")1, which was filed on December 1,

2018 by Corridor Medical Services, Inc., Correctional Imaging Services, LLC, CMMS Lab,

LLC("Debtors") for entry of interim and final orders authorizing Debtors to use cash collateral.

Upon review of the Motion and all relevant pleadings filed with this Court, the relief requested

---

1 A separate Motion was filed by each Debtor, but are being considered jointly in these proceedings.

therein and the evidence and representations adduced at the interim hearing, this Court makes the following findings of fact and conclusions of law:

1.      Debtors are unable to pay the reasonable expenses of its ongoing operations without permission for use of collateral and cash collateral in which security interests and liens are claimed by Pioneer Bank, SSB ("Lender").  Ongoing operations to preserve the going concern value of the Debtors' assets would be in the best interests of the Debtors and their creditors.

2.      Notice of this hearing on the Motion was served by United States mail, facsimile, electronic mail or overnight delivery, prior to this hearing on Lender, the United States Trustee, and the Debtor's twenty largest unsecured creditors and any parties asserting liens against property of the Estate by virtue of the filing of a current UCC Financing Statement.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(M) and 1334.

4.      Notice of the Motion and opportunity for hearing were adequate and appropriate under the circumstances of this case.

5.      The terms and conditions for the Debtors to provide adequate protection to Lender are proposed in good faith.

6.      The operating expenses proposed to be paid by the Debtors for the two week period described the Budget attached hereto as **Exhibit A** (the "Budget") are reasonable and necessary to prevent irreparable injury, loss, or damage to the Debtors' estates, and no creditor or party-in-interest has objected to the use of cash collateral other than Lender, which has consented to use subject to the terms of this Order.  No amounts shall be paid to professionals without court order.

7. The proposed form of this Order submitted by the Debtors complies with the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Texas, except as described in the Motion and the disclosures of counsel at the hearing on the Motion.

8. Lender claims a first and prior security interest, pursuant to Security Agreements between Lender and Debtors, in substantially all assets of the Debtors including, but not limited to, Debtors' accounts, accounts receivable, equipment, contracts, deposit accounts, general intangibles and the proceeds thereof and records relating thereto (the "Pre-Petition Collateral"), securing repayment of (i) a) a Note in the original principal amount of $1,339,000 dated March 10, 2017 payable by each of the Debtors to Lender; b) a Promissory Note executed by Corridor Medical Services, Inc. dated November 27, 2017 payable to Lender in the original principal amount of $1,000,000; and c) a promissory note executed by Corridor Medical Services, Inc. payable to Lender dated August 21, 2015 in the original principal amount of $131,139 (iii) all other obligations of Debtors to Lender.

9. No determination is made by this Court, as to the validity, priority, amount, allowance, extent, or voidability of the security interest or claims of Lender in this Order.

IT IS HEREBY ORDERED that, unless modified by subsequent order of this Court, the following terms shall apply:

1. Automatic Stay and Use of Cash Collateral.

a. Authorization. Subject to this Order, Debtors are hereby authorized under 11 U.S.C. 363(a), (c)(1), and (c)(2) to use Lender's collateral and cash collateral to pay the permitted expenses in the amount, for the purposes and in the time period described in the Budget. Except as herein provided, the automatic stay of

Bankruptcy Code § 362(a) shall continue in effect and until further modified or terminated by the Court.

b. Adequate Protection Obligations. Debtors are hereby authorized to protect Lender under 11 U.S.C. §§ 361 and 363, as set forth in this Order, for the Debtors' post-petition use and consumption of Lender's "Pre-Petition Collateral" and for the post-petition diminution in value of Lender's Pre-Petition Collateral (the "Adequate Protection Obligations").

c. Prohibited Transactions. Debtors shall not, except as set forth herein or except upon notice and opportunity for hearing to Lender: (a) enter into transactions for the sale out of the ordinary course of business of any property in which Lender claims a lien; (b) obtain credit under 11 U.S.C. § 364 (c) or (d) without the written consent of Lender; or (c) grant any liens or priorities on a parity with or senior to Lender's without Lender's written consent.

d. Use of Cash. The Debtors are authorized, subject to the terms of this Order, to use the following cash:

(a) All funds held by the Debtors on the Petition Date;

(b) All receipts, receivables, and collections received or to be received on or after the Petition Date from the sale of inventory or the disposition or use of the Pre-Petition Collateral; provided that Debtors shall account to Lender for all such receipts.

2. Accounting and Information. The Debtor shall provide an accounting to Lender bi-weekly, beginning on December 14, 2018 and every two weeks thereafter, of the Debtors' cash position, including income and expenses, and a comparison of budget-to-actual results. The

Debtors shall provide by no later than December 7, 2018, a listing of all accounts receivable with addresses and aging information for each account and account debtor. Additionally, Debtors shall provide Lender or its representatives with access to the Debtors' books and records on two (2) business days' prior notice to counsel for Debtors.

3.  Cash Collections and Deposits.

a.  Cash Collateral Accounts. The Debtors shall maintain all Debtor-In-Possession accounts with Horizon Bank, or a financial institution acceptable to Lender and approved by the United States Trustee. Lender is granted a replacement lien on all deposit accounts and all monies deposited therein, which lien shall secure Debtors' Adequate Protection Obligations. All the deposit accounts described in Paragraph 3a shall be referred to as the Accounts.

b.  Deposits. If the Debtors receive any cash, checks, wires, direct deposits or other payments, which are collections, income, proceeds, products, rents or profits of Lender's Pre-Petition Collateral or Post-Petition Collateral (as defined herein), the Debtors shall deposit the same in the Accounts within two banking days after receipt.

4.  Continued Operations.

a.  Budget. The operating expenses proposed to be paid by the Debtors as set forth on the Budget attached as Exhibit A (the "Permitted Expenses") are expressly subject to available funds on deposit. Expenditures or accruals may vary up to ten percent (10%) from the line items estimated in the Budget, so long as total disbursements and accruals do not exceed, the amounts set forth in the Budget plus 5% variance without the written consent of Lender. Debtors may utilize such

additional amounts for reasonable and necessary expenses of operation as approved by the Lender in writing. Nothing herein shall be construed to permit Debtors to overdraft any DIP account at any time during the pendency of this Order.

b.      The Debtors are authorized to use cash collateral to fund the Permitted Expenses prior to the termination date of this Order.

5.      Pre-Petition Debt. Nothing herein permits Debtors to pay indebtedness or transfer property to vendors, contractors, customers, or other persons whose debt may have been incurred pre-petition, except as specifically detailed in the Permitted Expenses and specifically for pre-petition wages and associated taxes approved by this Court. All persons reserve all rights and claims with respect to such indebtedness and property. Debtors shall not, without prior Court Order entered after at least five (5) days' notice to Lender, enter into any agreement to permit reclamation of goods, or return any inventory to any creditors for application against pre-petition indebtedness (under § 546 of the Bankruptcy Code or otherwise), or consent to any creditor taking any setoff or recoupment against any of its pre-petition indebtedness based upon any such return, pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise.

6.      Professional Fees and Administrative Expenses. Nothing in this Order (i) shall excuse any person from complying with the Bankruptcy Code and Bankruptcy Rules, and the Bankruptcy Local Rules of this Court and the guidelines of the United States Trustee with respect to applications for professional compensation and reimbursement of expenses, or (ii) shall be deemed to authorize or approve the receipt or payment of any retainer, advance fee, or compensation to any other professional employed by the Debtors, either prior to or after the petition date from any cash collateral of Lender. Debtors shall not pay any fees or expenses to

any attorney, accountant, consultant, advisor, broker, manager, or other professional governed by 11 U.S.C. §§ 327 through 331 except upon further order of this Court after notice and opportunity for hearing to Lenders, the U.S. Trustee, and the Committee, and any amount listed in the budget for payment of such fees (1) has not been agreed to by the Lender as of the date of this Order and (2) are subject to allowance by the Court.

7.     Application of Payments, Reservation of Rights.   Any payment to Lender or application of payments by Lender is for administrative convenience only, and without binding any person under 11 U.S.C. § 506(a) or Chapter 5 of Title 11 of the United States Bankruptcy Code.  Nothing in this Order shall prejudice the right of Lenders, the Debtors, or any party in interest concerning the validity, priority, extent, or allowance of Lender's claims, liens, collateral valuation, or the application of monies to principal, interest or fees claimed by Lender.

8.     Grant of Liens for Adequate Protection.

a.     Pre-Petition Collateral.   "Pre-Petition Collateral" means all of (i) the Debtors' interest in any property which is granted to Lender under the agreements and documents executed by the Debtors pre-petition, to the extent that Debtors' interest therein was acquired by Debtors prior to the Petition Date, and (ii) as to which Lender's lien and security interests are perfected, valid, and not avoidable as of the Petition Date, and (iii) the proceeds, products, rents, fees, charges, accounts, payments for use or occupancy or profits thereof acquired after the Petition Date, to the extent consistent with 11 U.S.C.§ 552(b).

b.     Preservation of Lien on Pre-Petition Collateral.  To the extent Lender's claims are allowed, perfected, not avoidable, and secured under 11 U.S.C. § 506(a) by Pre-

Petition Collateral, Lender shall remain entitled to the priority of its lien and security interest in the Pre-Petition Collateral.

c. Post-Petition Collateral. "Post-Petition Collateral" shall mean the Debtors' interest in all property which (i) first arises, is purchased, or acquired, or exists after the Petition Date, and (ii) is not Lender's Pre-Petition Collateral or the proceeds, products, rents or profits thereof under 11 U.S.C. § 552(b)

d. Grant of Lien as Adequate Protection. To secure the Debtors' Adequate Protection Obligations under this order and under Bankruptcy Code §§ 361(2), 362(d), and 363(e), Lender and any other pre-petition lender holding a valid and perfected lien is hereby granted a continuing lien upon all of the Pre-Petition Collateral, all of the Post-Petition Collateral, and all of the Accounts in the same order of priority and validity which existed pre-petition. The Lender's lien on Post-Petition Collateral shall have the priority of 11 U.S.C. §§ 364(c)(2) and (c)(3).

e. Exclusions. Lender's Post-Petition Collateral excludes: all causes of action and bankruptcy avoidance powers enumerated in Chapter 5 of Title 11, and any proceeds thereof.

f. Carve Out Expenses. The lien on Post-Petition Collateral is subordinated to the fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

g. No Cross-Collateralization. Nothing in this Order shall be deemed to grant to Lender a lien on Post-Petition Collateral for the purpose of securing indebtedness to Lender which first arose before the Petition Date, except Debtors' Adequate Protection Obligations.

h.   Perfection of Security Interests.  All liens granted or to be granted to Lender on the Post-Petition or Pre-Petition Collateral are deemed perfected and no further notice, filing, recording, control agreement, bailment arrangement, or order shall be required to effect such perfection under other State or Federal law.  This Order shall be deemed sufficient and conclusive evidence of the liens granted hereunder. Lender is authorized to file or record photostatic copies of this Order as financing statements and deeds of trust.  Such photostatic copies may be filed in any county or jurisdiction, and any recording officer is authorized to record such copies.  If Lender shall, in Lender's sole discretion, choose to file financing statements, deeds of trust, or other documents or otherwise confirm perfection of such liens, the automatic stay is hereby modified to permit Lender to effect such filings and recordations, and all such financing statements, deeds of trust, or similar documents shall be deemed to have been filed or recorded on the date of the entry of this Order.

9.   Grant of Priority Claim to Lender.

a.   Priority Claim.  Nothing in this Order shall be deemed a finding with respect to adequate protection (as that term is described in § 361 of the Bankruptcy Code), of the interest of Lender in the Pre-Petition Collateral.  In addition to being secured as provided herein, if, notwithstanding the provision of this Order, Lender may seek a claim for the Adequate Protection as an expense of administration in Debtors' bankruptcy cases under Bankruptcy Code §§ 503(b)(1), 362(d), and 363(e), with priority of § 507(b), senior to all other expenses of administration under Bankruptcy Code § 507(a)(1), subject to Paragraph 8f hereof.

b.  <u>Bankruptcy Trustee and Carve Out</u>. The priority of the Debtor's Adequate Protection Obligations to Lender as described herein shall continue notwithstanding the appointment of a Chapter 11 Trustee (subject to 11 U.S.C. §§ 726 and 507(b) or other applicable law), or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided that any priority claim allowable to Lender under Paragraph 9a of this Order is subordinated to the Carve Out Expenses described in Paragraph 8f hereof.

10. <u>Termination</u>.

a.  <u>Termination Date</u>. The Debtors' right to continue use of Lender's Pre-Petition Collateral shall terminate upon the first to occur of the following dates (the "Termination Date"): (i) a Lender notifies Debtors that Debtors have violated any term or condition of this Order; (ii) the effective date of any confirmed Chapter 11 Plan in this case, or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code, or the appointment of a trustee or an examiner in this case; (iii) the sale of all or a substantial part of the equity interests or assets of the Debtor, or the merger or business combination of the Debtor, without Lender's written consent; (iv) 5:00 p.m. on December 17, 2018,, unless extended beyond that date by Court order or stipulation between Debtor and Lender filed with the Court, or (vi) this Order is terminated or modified by order of this Court. The rights and interests granted to Lender hereunder shall survive the termination of Debtor's right to use cash collateral under this Order.

b.  <u>Remedies for Lender</u>. Upon the Termination Date then Lender may notify the Debtors and the U.S. Trustee that Lender is objecting to use of cash collateral.

Upon sending of such notice by facsimile, Lender may file an emergency motion for adequate protection or for relief from the automatic stay or other relief, and may set such motion for expedited hearing (subject to the Court's calendar) upon not less than three (3) business days' notice to the Debtors and the U.S. Trustee and Nothing herein shall prohibit Lender from seeking to terminate the automatic stay, voting against any plan of reorganization of the Debtors or seeking other appropriate relief which it, in its sole and absolute discretion, may wish to pursue.

c. <u>Debtors' Motion</u>. Debtor retains a right to move this Court notwithstanding Lender's objections, for an order pursuant to Bankruptcy Code § 105 or § 363(c)(2)(B) authorizing the use of collateral or cash collateral and for other relief, and the Debtors' motion may be set for expedited hearing (subject to the Court's calendar), upon not less than three (3) days' notice to Lenders and the U.S. Trustee.

11. <u>Successors and Assigns</u>. The provisions of this Order shall be binding upon the Debtors, Lender and their respective successors and assigns, including any trustee or representative of the estate hereafter appointed or elected in this Chapter 11 case or in any subsequent Chapter 7 case.

12. <u>Continuing Effect</u>. If all or any of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, or on appeal, such stay, modification, or vacation shall not affect (i) the validity or priority of any obligations owed to Lender by the Debtors incurred prior thereto, or (ii) the validity, enforceability, or priority of any lien or priority of Lender with respect to the Debtors' Adequate Protection. Any

Adequate Protection Obligations of Debtor arising prior to the effective date of such stay, modification, or vacation, shall be governed by the original provisions of this Order.

13.     Service of Pleadings. Debtors shall serve a copy of such pleadings or report, including monthly operating reports, heretofore or hereafter filed with the Court concurrently with the filing by Debtor, on the U.S. Trustee, Lender, and their counsel.

14.     Reservation of Rights. The Debtors, Lender and all parties in interest shall be deemed to reserve their respective rights and remedies under pre-petition agreements, and other applicable law. Nothing in this Order shall be deemed to prejudice, waive, or release the rights and remedies of the Debtors, or any party in interest arising under the Bankruptcy Code or other applicable law, including any avoiding actions and defenses thereto. Any adequate protection payments, priorities, liens, or other matters provided for under this Order shall not constitute an admission or determination that Lender is over-secured or under-secured. Nothing herein shall affect the validity, extent or priority of any lien held by any taxing authority.

15.     Service and Notice of Final Hearing. Pursuant to Bankruptcy Rule 4001, there shall be a final hearing on the Motion and on any motion for continued use of cash collateral, any objection thereto, any request for adequate protection, or any motion by the Debtor or Lender for approval of any agreement or stipulation to use cash collateral under 11 U.S.C. § 363 or to obtain credit under 11 U.S.C. § 364, and on any related motion which may be filed regarding cash collateral, adequate protection, or credit on December 17 2018 at 11:00 a.m. Debtors shall file the proposed final budget and final order by _December  13 2018 at 5:00 p.m. and any objection to the relief sought in the Motion and this Order on a final basis shall be filed and served by December , 14 2018 at 5:00 p.m. Debtors shall provide notice of the Motion and the final

hearing to all parties required by Bankruptcy Rule 4001(b) and file a certificate of service with the Court reflecting such service.

# # #

AGREED:

BARRON & NEWBURGER, P.C.


By:*/s/Stephen W. Sather*
    Stephen Sather
    State Bar no 17657520
    7320 N. Mopac Expy, Suite 400
    Austin, Texas 78731
    512 649 3243

PROPOSED ATTORNEYS FOR DEBTORS



AGREED:

WALLER LANSDEN DORTCH AND DAVIS, LLP


By:*/s/Eric J. Taube*
    Eric J. Taube
    State Bar No. 19679350
    Mark C. Taylor
    State Bar No. 19713225
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    512.685.6400
    512.685.6417 (FAX)
    Eric.Taube@wallerlaw.com
    mark.taylor@wallerlaw.com

ATTORNEYS FOR LENDER

| | CORRIDOR | LAB | CORRECTIONS | Total |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| **Total 501 · Fees** | 625,000.00 | 355,000.00 | 110,000.00 | 1,090,000.00 |
| ***Consultation-Funds from Corrections*** | 110,000.00 | | | 110,000.00 |
| **Total Income** | 735,000.00 | 355,000.00 | | 1,090,000.00 |
| **Gross Profit** | **735,000.00** | **355,000.00** | | **1,090,000.00** |
| **Expense** | | | | 0.00 |
| **Payroll expenses** | 364,759.01 | 228,558.00 | | 593,317.01 |
| **753 · Outside Services** | 30,000.00 | 0.00 | | 30,000.00 |
| **754 · Per Diem** | 625.00 | | | 625.00 |
| **772 · Contract Labor** | 5,500.00 | | | 5,500.00 |
| **797 · Interest Expense** | | | | 0.00 |
| **Ford Transit** | | | | 0.00 |
| **Pioneer SBA Interest 49030250** | | | | 0.00 |
| **Toyota** | | | | 0.00 |
| **Total 797 · Interest Expense** | 0.00 | 0.00 | | 0.00 |
| **798 · Loan Fees** | | | | 0.00 |
| **Cherub Reeves Fees** | | | | 0.00 |
| **Total 798 · Loan Fees** | 0.00 | 0.00 | | 0.00 |
| **800 · Automobile Expenses** | | | | 0.00 |
| **800.3 · Parking/Tolls/Regi** | 2,239.55 | | | 2,239.55 |
| **800.5 · Maintenance & Re** | 2,228.45 | | | 2,228.45 |
| **800.6 · Fuel** | 15,000.00 | | | 15,000.00 |
| **Total 800 · Automobile Expenses** | 19,468.00 | 0.00 | | 19,468.00 |
| **810 · Equipment Expense** | | | | 0.00 |
| **810.1 · Maintenance & Re** | 2,000.00 | | | 2,000.00 |
| **810.2 · Equipment Rental/Lease** | | | | 0.00 |
| **810.3 · Computer Equipm** | 0.00 | | | 0.00 |
| **Total 810 · Equipment Expense** | 2,000.00 | 0.00 | | 2,000.00 |
| **831 · Office Expenses** | | | | 0.00 |

| | | | | |
|---|---:|---:|---:|---:|
| **831.1 · Supplies-Office** | 7,500.00 | 500.00 | | 8,000.00 |
| **831.2 · Postage and Deliv** | 500.00 | | | 500.00 |
| **831.3 · Printing and Repro** | 0.00 | | | 0.00 |
| **831.4 · Miscellaneous** | 2,500.00 | | | 2,500.00 |
| **Total 831 · Office Expenses** | 10,500.00 | 500.00 | | 11,000.00 |
| **835 · Software Fees** | 4,500.00 | | | 4,500.00 |
| **850 · Medical Fees & Supplies** | | | | 0.00 |
| **850.1 · Medical Supplies** | 3,000.00 | 12,500.00 | | 15,500.00 |
| **850.2 · Laboratory Fees** | | 37,500.00 | | 37,500.00 |
| **Total 850 · Medical Fees & Supplies** | 3,000.00 | 50,000.00 | | 53,000.00 |
| **851 · Lab Expenses - Shipping** | 6,000.00 | | | 6,000.00 |
| **855 · Telephone & Communications** | 15,000.00 | 5,000.00 | | 20,000.00 |
| **857 · Bank Charges & Credit Card Fees** | | | | 0.00 |
| **Bank Charges/CC** | | | | 0.00 |
| **Total 857 · Bank Charges & Credit Car** | 0.00 | 0.00 | | 0.00 |
| **860 · Occupancy Expenses** | | | | 0.00 |
| **860.1 · Rent** | 20,000.00 | 20,000.00 | | 40,000.00 |
| **860.2 · Utilities** | 7,500.00 | 750.00 | | 8,250.00 |
| **860.4 · Repairs & Improve** | 500.00 | | | 500.00 |
| **860.5 · General Maintenar** | 500.00 | | | 500.00 |
| **Total 860 · Occupancy Expenses** | 28,500.00 | 20,750.00 | | 49,250.00 |
| **863 · Travel & Entertainment** | | | | 0.00 |
| **863.1 · Meals** | | | | 0.00 |
| **863.2 · Lodging** | | | | 0.00 |
| **Total 863 · Travel & Entertainment** | 0.00 | 0.00 | | 0.00 |
| | | | | |
| **877 · Business & Professional Fees** | | | | 0.00 |
| **877.5 · Computer** | 7,800.00 | | | 7,800.00 |
| **877.6 · Radiology** | 75,000.00 | | | 125,000.00 |
| **877 · Business & Profess** | 2,500.00 | 1,500.00 | -125,000.00 | -121,000.00 |
| **Total 877 · Business & Professional Fe** | 85,300.00 | 1,500.00 | | 86,800.00 |
| **Total Expense** | 575,152.01 | 306,308.00 | 0.00 | 881,460.01 |
| **Net Ordinary Income** | 159,847.99 | 48,692.00 | 0.00 | 208,539.99 |
| **Net Income** | **159,847.99** | **48,692.00** | **0.00** | **208,539.99** |