**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **CORRIDOR MEDICAL SERVICES, INC.** | § | **Case No. 18-11569** |
| **CORRECTIONAL IMAGING SERVICES,** | § | **Case No. 18-11570** |
| **LLC and CMMS LAB, LLC** | § | **Case No. 18-11571** |
| Debtors | § | **(Chapter 11)** |
| | § | **(Jointly Administered Under** |
| | § | **Case No. 18-11569)** |

# D**ISCLOSURE** S**TATEMENT UNDER** 11 U.S.C. §1125
# F**OR THE** D**EBTOR'S** J**OINT** P**LAN OF** R**EORGANIZATION**
# D**ATED** A**UGUST** 7, 2020

Barbara M. Barron
Stephen W. Sather
**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expwy, Ste. 400
Austin, Texas 78701
(512) 476-9103
(512) 476-9253 (Facsimile)

ATTORNEYS FOR DEBTORS

**Corridor Medical Services, Inc.**
**Corrrectional Imagining Services, LLC**
**CMMS Lab, LLC**
1900 Dutton Drive
San Marcos, Texas 78666

DEBTORS

## <u>TABLE OF CONTENTS</u>

**I. INTRODUCTION** ......................................................................................................... 1
   **A.  IDENTITY OF THE DEBTOR** ...................................................................... 1
   **C.  GENERAL INFORMATION RE DISCLOSURE STATEMENT AND PLAN** ........ 2
   **C.  DISCLAIMERS** ........................................................................................... 2
   **D.  ANSWERS TO COMMONLY ASKED QUESTIONS** ..................................... 3
**II. INFORMATION CONCERNING THE DEBTOR** ................................................... 7
   **A.  OVERVIEW OF THE DEBTORS** ................................................................ 7
   **B.  SIGNIFICANT EVENTS PRIOR TO BANKRUPTCY FILINGS** ..................... 7
      **1.  *Background*** ........................................................Error! Bookmark not defined.
      **2.  *Events Leading to Bankruptcy*** ....................................................... 8
   **C.  SIGNIFICANT EVENTS SINCE FILING BANKRUPTCY** ........................... 8
      **1.  *The Businesses*** ............................................................................. 8
      **2.  Legal Proceedings during the Cases** ............................................. 9
   **D.  AFTER BANKRUPTCY** ............................................................................ 11
      **1.  Proposed Operations After Bankruptcy** ...................................... 11
      **2.  FUTURE MANAGEMENT OF THE DEBTOR** ................................. 11
**III. FINANCIAL INFORMATION** ............................................................................ 13
   **A.  PRE-BANKRUPTCY** ................................................................................ 13
      **1.  Corridor Medical Services, Inc.** .................................................. 13
      **2.  Correctional Imaging Services, LLC.** ........................................... 14
   **B.  FINANCIAL RESULTS SINCE FILING BANKRUPTCY** ........................... 14
   **C.  ESTIMATED FUTURE INCOME AND EXPENSES** ..................................... 15
**IV. ANALYSIS AND VALUATION OF PROPERTY** .............................................. 15
   **A.  REAL PROPERTY** ................................................................................... 15
   **B.  PERSONAL PROPERTY** .......................................................................... 15
      **1.  Corridor Medical Services, Inc.** .................................................. 15
      **2.  Correctional Mobile Medical, LLC** .............................................. 15
      **3.  CMMS Labs, LLC** ........................................................................ 15
   **C.  LIQUIDATION VALUE** ............................................................................ 16
**V. SUMMARY OF PLAN OF REORGANIZATION** ............................................... 16
   **A.  OVERVIEW OF THE PLAN** ..................................................................... 16
   **B.  ANALYSIS AND TREATMENT OF CLAIMS** ........................................... 17
      **Class 1—Allowed Administrative Expense Claims** ............................... 17
      **Class 2—Priority Claims of Employees** ................................................ 17
      **Class 3—Priority Claims for Patient Refunds** ..................................... 17
      **Class 4—Priority Tax Claims** ............................................................... 18
      **Class 5—Secured Claims of Ad Valorem Taxing Authorities** ............... 18
      **Class 6—Secured Claim of Pioneer Bank** ........................................... 18
      **Class 7—Secured Claim of Bank United, SBF** ..................................... 19
      **Class 8—Secured Claims of Toyota Motor Credit** ............................... 19
      **Class 9—Secured Claim of Ford Motor Credit** ................................... 20
      **Class 10— Claims of Great America Financial Services Corp.** ........... 20
      **Class 12—Secured Claim of Complete Business Solutions Group (CBSG)/Par Funding/New York Unity Factor** ........................................... 21

**Class 13—Secured Claims of Merchant Cash Advance Parties/No Claim Filed**...... 22
**Class 14—Merchant Cash Advance Claims Not Disputed or POC Filed**................. 23
**Class 15—Unsecured Claims of Creditors with Claims of $5,000.00 or Less or
    Which Elect to Reduce their Claims to $5,000.00** ............................................ 24
**Class 16—Unsecured Claims of Creditors with Claims of $5,000.01 or More** ........ 24
**Class 17—Subordinated Claims** .................................................................................... 24
**Class 18—Intercompany Claims** .................................................................................... 25
**Class 19—Equity Interests** ............................................................................................ 25
**C.   FEASIBILITY OF THE PLAN AND RISK TO CREDITORS**................................ 25
**D.   REMEDIES FOR DEFAULT**.................................................................................... 25
**E.   CLAIMS ALLOWANCE PROCEDURE** .................................................................. 26
**F.   ASSUMPTION AND REJECTION OF LEASES AND CONTRACTS** ................... 26
**G.   EXCULPATION AND RELEASES** ........................................................................ 29
**H.   RETENTION OF JURISDICTION** .......................................................................... 30
**I.   POST-CONFIRMATION PROCEDURE** .................................................................. 30
**VI.  ALTERNATIVES TO THE DEBTOR'S PLAN** ........................................................ 30
**A.   CONVERSION** ........................................................................................................ 30
**B.   DISMISSAL**............................................................................................................. 30
**VII. RELATIONSHIP OF DEBTOR WITH AFFILIATES** ............................................ 30
**VIII. TAX CONSEQUENCES** ............................................................................................ 31
**IX.  PENDING AND POTENTIAL LITIGATION**............................................................ 32
**A.   PENDING PRE-BANKRUPTCY LITIGATION** ................................................... 32
**B.   CLAIMS CREATED UNDER THE BANKRUPTCY CODE**................................ 34
**1.   Preferences**.................................................................................................. 34
**2.   Fraudulent Conveyances**........................................................................... 34
**3.   Other Claims Created By the Bankruptcy Code** ................................... 34
**C.   NON-BANKRUPTCY CAUSES OF ACTION**.................................................... 35
**X.  SOLICITATION OF VOTES**...................................................................................... 35

**Exhibits:**
Exhibit A – Financial Results During Bankruptcy
Exhibit B – Pro Formas
Exhibit C-  Liquidation Analysis
Exhibit D – Claims Analysis

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **CORRIDOR MEDICAL SERVICES, INC.** | § | **Case No. 18-11569** |
| **CORRECTIONAL IMAGING SERVICES,** | § | **Case No. 18-11570** |
| **LLC and CMMS LAB, LLC** | § | **Case No. 18-11571** |
| **Debtors** | § | **(Chapter 11)** |
| | § | **(Jointly Administered Under** |
| | § | **Case No. 18-11569)** |

## DISCLOSURE STATEMENT UNDER 11 U.S.C. §1125 for DEBTORS' JOINT PLAN OF REORGANIZATION DATED AUGUST 7, 2020

## IMPORTANT

**THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR ENTITLED TO VOTE ON ACCEPTANCE OF THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION REQUIRED BY THE BANKRUPTCY CODE AS TO THE DEBTOR'S PLAN OF REORGANIZATION. ALL CREDITORS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.**

Creditors may read the specific provisions applicable to their class in Section V(B) of this Disclosure Statement.

## I. INTRODUCTION

### A. IDENTITY OF THE DEBTOR

**Corridor Medical Services, Inc.** is a Texas corporation which provides x-ray, ultrasound,doppler, echocardiogram, and electrocardiogram services to patients who are restricted in travel.

**Correctional Imagining Services, LLC** is a Texas limited liability company which provides. x-rays and electrocardiogram services to inmates and other detainees in governmental facilities, who by reason of their incarceration are restricted in travel.

**CMMS Lab, LLC** is a Texas limited liability company which provided as of the Petition Date through March 2019, laboratory testing services to patients who were restricted in travel.

## B.    GENERAL INFORMATION RE DISCLOSURE STATEMENT AND PLAN

The Plan which this Disclosure Statement accompanies is being promulgated by the three Debtors (collectively "Corridor"). It has attempted to provide the maximum recovery to each Class of Claims in light of the assets and anticipated funds available for distribution to Creditors. The Debtors believe that the Plan permits the maximum possible recovery for all Classes of Claims while facilitating the reorganization of the Debtor.

Corridor submits this Disclosure Statement pursuant to 11 U.S.C. § 1125 and Fed. R. Bankr. P. 3016 to all known claimants of Debtors for the purpose of disclosing that information which the Court has determined is material, important, and necessary for creditors and the Debtor's equity interests in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of this Joint Plan.

This Disclosure Statement describes the operations of the Debtors as it impacts the distributions to creditors proposed under the Plan. However, it is not intended to replace a careful review and analysis of the Plan, including the specific treatment you as a creditor or equity holder will receive under the Plan. It is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. Every effort has been made to fully explain various aspects of the Plan as it affects Creditors and Equity Holders. If any questions arise, Movant urges you to contact the Debtors' counsel and every effort will be made to address your questions. You are, of course, also urged to consult with your own counsel.

A copy of the Plan is enclosed. Capitalized terms used therein, if not separately defined, have the meanings assigned to them in the Plan or in the Bankruptcy Code and Bankruptcy Rules. Any accounting information contained herein has been provided by the Debtor and has been prepared using the cash method of accounting.

## C.    DISCLAIMERS

NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND 11 U.S.C. § 1125 AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY

**REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

**UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF.**

**NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

**THE INFORMATION IN THIS DISCLOSURE STATEMENT WAS OBTAINED BY THE DEBTORS FROM THE RECORDS OF THIS CASE AND THEIR BUSINESS RECORDS.**

## D. ANSWERS TO COMMONLY ASKED QUESTIONS

As part of the Debtors' effort to inform Creditors regarding the Debtors' Plan and the plan confirmation process, the following summary provides answers to various questions which are often asked by a party receiving a disclosure statement.

**THE FOLLOWING SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

1. **WHO IS THE DEBTOR?**
   Corridor Medical Services, Inc., Correctional Imagining Services, LLC, and CMMS Lab, LL, are each a debtor in separate Chapter 11 bankruptcy cases. This plan provides for all creditors and property in all three cases.

2. **HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?**
   Since November 30, 2018.

3. **WHAT IS CHAPTER 11?**

Chapter 11 is the business reorganization provision of the Bankruptcy Code. It permits a Debtor or a third party to submit a Plan providing for the sale, distribution or retention of Debtor's assets to be used for the repayment of its debts.

**5.    WHAT ARE THE DEBTORS ATTEMPTING TO DO IN CHAPTER 11?**

The principal objective of a Chapter 11 case is confirmation of a plan of reorganization that enables a financially distressed debtor to restructure its assets and its debts. A plan of reorganization sets forth the means for treating impaired and unimpaired claims against a debtor. A claim is impaired under a plan of reorganization if the plan provides that such claim will not be repaid in full or that the legal, equitable, or contractual rights of the holder of such claim will be altered. A claim is unimpaired if it will be paid in full or the legal, equitable, or contractual rights of the holder of such claim are not altered by the plan of reorganization. A holder of an impaired claim generally is entitled to vote on a plan of reorganization if such claim has been allowed under Section 502 of the Bankruptcy Code.

**6.    HAVE THE DEBTORS PROPOSED A PLAN OF REORGANIZATION?**

Yes. The three Debtors have filed a Plan as well as this Disclosure Statement.

**7.     IF THE PLAN OF REORGANIZATION GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?**

The Bankruptcy Code requires that a plan proponent solicit acceptances and rejections of its proposed plan before the plan can be confirmed by the Bankruptcy Court. Before a plan proponent can solicit acceptances of its plan, the Bankruptcy Court must approve the disclosure statement and determine that the disclosure statement contains information adequate to allow creditors to make informed judgments about the plan. After Bankruptcy Court approval of the disclosure statement, the disclosure statement, the proposed plan and a ballot are sent to the holders of claims. The creditors then have the opportunity to vote on the Plan and should consider this Disclosure Statement for such vote.

**8.    HAS THE COURT APPROVED THIS DISCLOSURE STATEMENT?**

Before a plan of reorganization can be sent to creditors for voting, the Bankruptcy Court must find that the disclosure statement contains information of a kind, and insufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records to enable a hypothetical, reasonable investor typical of holders of claims of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's has approved the Disclosure Statement in this case but this approval does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan. Likewise, although the Debtors and their counsel have utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtors nor their counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement nor should the Disclosure Statement be construed to be any representation or

warranty whatsoever--express, implied or otherwise--that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the debts of the Debtor, or that the projections or plans of the Debtors for payment will be realized.

9. **WHY IS CONFIRMATION OF THE PLAN IMPORTANT?**

Confirmation of the Plan by the Bankruptcy Court is necessary for the Debtors to provide the proposed treatment to Creditors under the Plan. Unless the Plan is confirmed, the Debtors are legally prohibited from providing you what has been proposed in the Plan.

10. **WHAT IS NECESSARY TO CONFIRM A PLAN OF REORGANIZATION?**

At the hearing scheduled by the Court, the Court will consider whether the Plan of Reorganization should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan of Reorganization. **YOUR VOTE IS IMPORTANT.** In order for the Plan to be accepted, at least two-thirds in amount and more than one-half in number of the **voting creditors** in each class must affirmatively vote for the Plan. Even if all classes of claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan. The Court must find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the proponent of the Plan has also complied with the Bankruptcy Code. The Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Court must find that the proponent of the Plan has disclosed the identity and affiliation of the persons who will manage the Reorganized Debtor after confirmation, that the appointment of such persons is consistent with the interest of creditors and equity security holders and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the reorganized Debtor has been disclosed. The Court must additionally find that each class of claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Code also provides for the treatment of certain priority claims. If any classes of claims are impaired under the Plan, the Court must find that at least one class of claims that is impaired has accepted the Plan without counting any votes by insiders. The Court must also find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtor. Additionally, the Plan must provide for payment of fees to the United States Trustee.

If the Plan is not accepted by all classes of claims or interests, the Debtor may attempt to obtain confirmation under what is known as "cram-down." To obtain confirmation by cram-down, the Court must find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired by the Plan and has not accepted the Plan. The Code provides several options for a Plan to be "fair and equitable" to a secured creditor, which includes the secured creditor retaining its lien and receiving deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the Court, whichever is less. With

respect to a class of unsecured claims, the requirement that a Plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim.  In the event that the Plan is not accepted by all classes, the Debtor will seek to obtain confirmation through "cram-down."

**11.    ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?**

Yes.  Each impaired Creditor is entitled to vote on the Debtor's Plan.  If you are a Creditor, a ballot to be used for voting on the Plan has been distributed to you with this Disclosure Statement.  If you lose your Ballot, you may request another one from Debtors' Counsel.  Instructions for completing and returning the Ballot are set forth on the Ballot and should be reviewed carefully.

**12.    HOW WILL THIS PLAN TREAT MY CLAIM?**

People who are owed money by the Debtor hold what is known as a "claim."  The Plan organizes claims into classes based upon the type of claim and the treatment which it will receive under the Plan.  In order to determine how the Plan treats your claim, you must first determine which class covers your claim.  To find the treatment of your claim, look in the Table of Contents to find the category which best describes your claim or in the Claims Analysis attached hereto.

**13.    WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?**

The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots must be received by the Debtor no later than 5:00 p.m. Austin time, on the date set by the Court, at the following address:

> PLAN BALLOTS—CORRIDOR
> BARRON & NEWBURGER, P.C.
> ATTN:  Barbara Barron
> 7320 N. Mopac Expwy, Suite 400
> Austin, Texas 78731

You may also vote by facsimile transmission by sending your ballot to PLAN BALLOT—CMMS, Barron & Newburger, P.C., ATTN:  Barbara Barron, (512) 476-9253 or by sending a "pdf" file of your scanned ballot attached to an email addressed to BBARRON@BN-LAWYERS.COM with the language "CORRIDOR Ballot" in the subject line.

**IT IS IMPORTANT THAT ALL CREDITORS VOTE ON THE PLAN.  THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS.  FOR THIS REASON, THE DEBTORS BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS AND RECOMMEND THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## II. INFORMATION CONCERNING THE DEBTOR

### A. OVERVIEW OF THE DEBTORS

Corridor Medical Services, Inc., a Texas corporation, was founded in 1996 by Stephen R. Nelson to provide mobile x-ray services. Its services expanded and now also include ultrasound, doppler, echocardiogram, and electrocardiogram services to patients who are restricted in travel. Its client base consists almost exclusively of health care facilities and home health care agencies in Texas.

Correctional Imaging Services, LLC, a Texas limited liability company, was founded by Stephen R. Nelson in 1999 to service prison and detention facilities. It provides x-rays and electrocardiogram services to inmates and other detainees in governmental facilities, who by reason of their incarceration are restricted in travel.

CMMS Lab, LLC, a Texas limited liability company, was founded in 2016 by Stephen R. Nelson to provide hematology, chemistry histology, micro-biology and other various blood tests. to patients who were restricted in travel. It was operational through March of 2019.

### B. SIGNIFICANT EVENTS PRIOR TO BANKRUPTCY FILINGS

#### 1. Background

Stephen Nelson formed Corridor after perceiving a need during his time in home health care to bring equipment and testing to patients who could not travel to medical facilities for testing. The original shareholders were Nelson, Cherub Nelson (his wife at the time) and Susan Reeves (his mother-in-law). At its inception, Corridor performed only mobile x-rays services. It added ultrasound in 2010, which included echocardiograms and EKG's. Financially, it took until 1999 to become profitable, but from that time its revenue and profits continued to increase. By 2016, it was generating about $ 12 million per year in revenue and a profit of approximately $1.2 million.

Correctional commenced activity in 1999. It performed the same services as Corridor for prison facilities and detention facilities. It began in Laredo and Del Rio and expanded through Texas into Oklahoma in 2012, and California in 2015. Correctional was profitable from its inception: it grew from $ 800,000 in revenue its first year to $ 2.6 million in 2016 with profits that year of approximately $ 225,000. The initial members were Nelson, Cherub Nelson, and Elizabeth Tochterman.

As time went on, Nelson came to believe that there would be a synergy in making mobile laboratory testing available as well. A Lab would add a separate profit center as well as increase Corridor's share of its market. CMMS Lab was created with a loan from Pioneer Bank for approximately $2 million along with a significant amount of very sophisticate, very expensive leased equipment. It began operations in 2016 to perform a wide range of blood testing. Its initial members were Nelson (90%) and Tracy Molden (10%). Unfortunately, CMMS Lab never became profitable. Corridor paid most of CMMS Lab's expenses, which it characterized as a loan and which totaled about $6,219,047 up through the Petition Date.

In 2010, Susan Reeves' shares of Corridor were bought back by Corridor and the purchase price was partially paid. Elizabeth Tochterman's membership interest in Correctional was also repurchased in 2012 and the purchase price paid in full. In 2017, the interest of Cherub Nelson (now Reeves) in Corridor was purchased for $ 2.45 million and her interest in Correctional for $580,000. Both these sums were still owed as of the Petition Date.

### 2. *Events Leading to Bankruptcy*

Corridor became unable to cover its expenses and all of CMMS Lab's losses beginning in September of 2017. The three companies began utilizing Merchant Cash Advances ("MCA's"), borrowing approximately $ 2.1 million from fifteen (15) MCA Lenders between August 2017 and March 2018. When they became unable to pay the daily or weekly payments required under the MCA agreements, these lenders began taking judgments based on confessions of judgment obtained when the "advances" were made and/or began levying on providers and account debtors which owed the entities for services rendered—primarily Corridor. By the Petition Date, Corridor had paid about $ 1 million to these lenders and had at least $572,000 seized.

During this period, Corridor did not miss any payments to its two secured lenders, Pioneer Bank and Bank United. However, one of its loans to Pioneer Bank came due on or about February 27, 2018 and, notwithstanding representations made to Nelson, the Bank refused to renew the loan and declared all three of Corridor's loans in default.

Corridor attempted to remain current on its operating expenses and that of CMMS Lab. However, some payments fell behind. In November of 2018, Hays County attempted to execute and seize its personal equipment for non-payment of 2017 *ad valorem* taxes.

Corridor had more than enough collectible receivable to cover not only its secured debt but all the other debt that it owed. However, it was unable to negotiate reasonable, performable payouts to Pioneer Bank and the MCA lenders. It was also unwilling to continue covering the losses incurred monthly by CMMS Lab or borrow any additional working capital to cover these losses. With the execution by Hays County imminent, all three companies filed for protection under chapter 11 on November 30, 2018.

## C. SIGNIFICANT EVENTS SINCE FILING BANKRUPTCY

### 1. *The Businesses*

Corridor and Correctional were profitable without the debt service incurred for, and losses incurred by, CMMS Lab. They have been profitable post-petition. However, Corridor has taken specific steps to reduce its expenses and increase its profit margins since the Petition Date. It laid off twenty-one employees who it deemed to be non-essential. It closed two areas of operation and restricted service hours in rural markets from twenty-four/seven days a week to twelve hours/seven days a week. It began focusing on home health care rather than health care facilities as rates are higher and payment turnaround significantly faster. It also began tightening financial protocols, which had not developed as quickly as the business had expanded.

Corridor has strategically changed its imaging operations from a 24/7 model that serviced long term care facilities to a model that is focused on the home health marketplace. The benefits of this change are three-fold. The first benefit is that the reduced hours allow for a much smaller footprint of necessary resources. The second benefit is the Home Health payor source is straightforward insurance. This reduces the time and complexity for collection of accounts receivable. The third benefit is that the reduced operational footprint is much more manageable. Corridor will continue to provide services to the Correctional marketplace. The Covid-19 pandemic has caused a massive reduction in the inmate population resulting in a temporary reduction of revenue.

Corridor fully anticipates a return to previous levels by mid-2021.

Corridor is re-entering the lab marketplace specifically to provide Covid-19 testing. This is viewed as a short-term project not lasting much beyond the end of 2021. The testing shortage for the Covid-19 virus is well documented in the local and national news on a daily basis. HHS has recently mandated that all long-term care personnel be tested weekly until the state's positive rate is below 5%. Corridor is providing point of care antigen testing for these employees. Corridor also performs PCR or swab tests for nursing home residents and employees.

With the strategic changes in focus Corridor has realigned its management team. The team is reduced from the previous ten members to five. Stephen Nelson is President and CEO, Raquel Cepeda is CHRO, Jaime Lowry is COO, Fran Rudisill is CCO, Robert Farias is CFO, and Tom Cosgrove is Director of Support Operations. Corridor has brought on Arlene O'Neil as Director of technical operations for the Covid-19 testing. A short bio of each is included in Section II(D)(2).

### 2. Legal Proceedings during the Cases

The Debtors filed their cases on November 30, 2018. The Court ordered joint administration of the cases on December 3, 2018. The Court approved several initial motions, including permission to pay employee wages and for use of cash collateral. The cases were also designated as complex chapter 11 cases.

The Debtors rejected fourteen leases and contracts between January and June 2019. They assumed six leases of real property.

The Debtors received permission to employee Barron & Newburger, P.C. as their attorneys, Farias, Jeff & Company as their accountants and Dan Bensimon as financial advisor. The U.S. Trustee appointed Susan Goodman as Health Care Ombudsman.

The Debtor reached an agreement for adequate protection with BankUnited, N.A. and this secured creditor has been paid in full.

The Debtor filed a motion for sanctions and turnover against Rapid Rad Technology and Emergent Connect with regard to access to Debtor's data. This motion was resolved by an agreed order entered on September 10, 2019.

The Debtor filed a motion for sanctions and turnover against Complete Business Solutions Group, Inc., Par Funding and New York Unity Factor, LLC. The Debtor reached a settlement with these parties which resulted in substantial funds being turned over to the estate. However, the Court abated approval of the motion to compromise with CBSG based on an objection from Pioneer Bank. The compromise with CBSG is incorporated into the Debtor's current plan.

The Debtor filed a motion to authorize Blue Cross/Blue Shield to turn over funds belonging to the Debtor which it had been holding. This motion was granted and funds in the amount of over $146,000 were turned over. The Debtor believes that BCBS is holding additional funds belonging to the Debtor and is seeking recovery of such funds.

In April 2020, the Debtor received permission to sell certain surplus property.

On June 8, 2020, the Court entered an order authorizing the Debtor to compromise and settle with Pioneer Bank. Under the agreement, the Debtor purchased the claims of Pioneer Bank at a discount. The compromise was implemented and the Debtor has completed the purchase of the Pioneer Bank claims.

The Debtor also instituted a program to collect delinquent accounts receivable. Debtor's counsel sent a total of twenty-nine demand letters and has collected $54,554.00 to date. The account debtors have agreed to pay additional amounts totaling $81,995.21 on dates certain.

The Debtor has filed various litigation (adversary proceedings) which are summarized as follows:

| Adv. No. | Date Filed | Defendant(s) | Relief Sought | Disposition |
|----------|-----------|--------------|---------------|-------------|
| 19-1073 | 10/25/19 | OnPointe Management, LLC | Recover funds owing to Debtor in amount of $194,902.13 | Compromised and settled. Debtor received $60,000 |
| 20-1009 | 1/10/20 | Green Capital Funding and Max Recovery Group, LLC | Recover preferential transfers totaling $77,569.19 | Pending; agreed to settle for $15,500 |
| 20-1010 | 1/10/20 | MCA Recovery, LLC and High Speed Capital, LLC | Recover preferential transfers totaling $96,945.12 | Pending |
| 20-1011 | 1/10/20 | Ace Funding Source, LLC | Recover transfers, avoid liens and recover damages for breach of contract | Settled. Defendant paid $6,000 and agreed that its remaining claims would be unsecured |

| 20-1012 | 1/17/20 | GTR Source, LLC | Recover transfers | Settled. Defendant to pay $32,000 |
| 20-1030 | 6/1/20 | Rapid Radiology, Inc. | Recover transfers | Pending |

## D. AFTER BANKRUPTCY

### 1. Proposed Operations After Bankruptcy

The purpose of the Plan is to pay the Allowed Claims owed by the Debtors as of the Petition Date and administrative claims accruing during the bankruptcy proceedings. Funds from one estate may be used to pay claims in one of the other. Corridor and Correctional will commence operations as one entity and CMMS Lab will continue until management believes all collectible receivables have been collected, at which time it will be dissolved. At the conclusion of payments to all unsecured creditors, Debtors should have only long-term secured debt and current liabilities, as all debts and other claims shall be resolved.

As discussed above, Corridor has taken the opportunity during the pendency of the bankruptcy cases to trim down operational expenses and cease operations in the portion of its business that was not profitable. Its current operations are consistently positively cash flowing. They anticipate that profits will continue to rise as the significant costs of these bankruptcy cases are eliminated and they have the time and bandwidth to market more aggressively. Moreover, several of their major competitors have also filed bankruptcy or are financially troubled and they believe that these factors will provide opportunities to provide its services.

### 2. Future Management of the Debtor.

**Stephen Nelson**

Stephen Nelson is the President and sole director of Corridor and the Manager of Correctional and CMMS Labs. Stephen R. Nelson was licensed as a Registered Nurse in 1992. He worked as an R.N. for seven years in various hospitals and for home health care agencies. His focus during his time in hospitals was the Intensive Care Units and the Catheterization Laboratories. He formed Corridor in 1996.

**Raquel Cepeda**

Raquel began her career with Corridor eleven years ago as a bookkeeper and payroll clerk. During this time, she demonstrated a robust knowledge base and innate leadership qualities. She was promoted to Chief Administration Officer soon thereafter, where she took responsibility for the oversight of multiple aspects of the business, including health benefits, employee and company insurance, fleet management and employee administration. In this role, Raquel installed a fleet tracking system, reduced employee healthcare costs, and developed the Corridor employee handbook.

Wanting to better serve the company and to further develop herself, Raquel sought out education related to Human Resources. She dedicated her free time to multiple classes and programs and in 2018 she became a SHRM Certified Professional. With this accomplishment, Raquel was promoted to Chief Human Resources Officer. Additionally, in the last year Raquel has also taken on the role as Bankruptcy Coordinator, where she performs many of the responsibilities necessary to lead Corridor through this obstacle. She has been the primary player in bankruptcy related tasks such as coordinating with bankruptcy attorneys, accountants and Corridor's CEO to assure budgets and critical vendor payments are made in a timely manner.

**Jamie Lowry**

Jamie has been with Corridor for more than six years in which time she has played a pivotal role in the internal operations of the business. Beginning her career in the dispatch department, Jamie quickly proved to have strong business and leadership acumen. She quickly became the expert for all processes and procedures for the department and was also viewed as a coach and mentor by her peers. Jamie was named supervisor of the dispatch team soon thereafter, where she employed improved processes from her experience and intimate knowledge of the work. She expanded on her leadership presence by instituting structured team meetings, team member appreciation awards and events, and dedicated herself to coaching team members one on one.

Under her supervision, the dispatch team quickly established themselves as an effective and efficient department, acting as a central lifeblood of the company. Because of the advancement of the team, Jamie was promoted to Chief Operations Officer in 2018. During her time as COO, Jamie has overseen two PACS system conversions and integrations, she has developed a system to track and mitigate customer issues, and she has installed training and reeducation classes for her team members. Jamie recently took over the Corridor Compliance Program and is currently working on a companywide assessment and improvement project. Additionally, Jamie is a primary figure in Corridor's philanthropic efforts. She leads most volunteering efforts, including food drives, collection of supplies for the troops, and a program that will be beginning soon in which Corridor team members will volunteer their time at a local nursing home.

**Fran Rudisill**

Fran graduated from Midwestern State University with a degree in radiologic sciences in 1986. Since that time, Fran has worked as a registered radiologic technologist in six different states, she is registered by the American Registry of Radiologic Technologists (ARRT), and she is a member of the American Society of Radiologic Technologists. She has also held positions as a mammography tech, a CT tech, an interventional tech, and a diagnostic tech.

Beginning as a staff tech in Dallas more than fifteen years ago, Fran rose through the ranks and became Corridor's Chief Clinical Officer in 2014. In this role she is responsible for the oversight of all of Corridor's radiologic technologists in the field. Using her education, knowledge, and years of experience, Fran ensures that the team is providing professional and accurate services to Corridor's clients. She trains her team member on best practices and company policies, and acts as a mentor to ensure they are efficient and effective. Additionally, Fran manages all licensing related to our technologists and diagnostic equipment.

**Tom Cosgrove**

Tom has been in mid-to-executive level management, in multiple industries, for almost fifteen years. With much of his career dedicated to team member development, process optimization, and customer service/care, he utilizes what he has learned to build strong teams that can effectively serve internal and external customers. Additionally, Tom has completed a number of managerial and/or operational programs in the last ten years, such as a Six Sigma Grey Belt Program led by High Impact Coaching Strategies and the "Catalyst Management Program" led by Emergent Execs.

Joining the Corridor team in June 2018, Tom's initial mission was to build a more focused and driven marketing team. During his time managing the marketing team he has implemented advancements including team metrics, a lead management system, and a weekly marketing team meeting. After exhibiting a healthy knowledge and acuity for technology related topics, Tom took over administration of the company's Google Suite system in early 2019 and the IT department in September 2019. In this secondary role, he has reduced costs associated to Google user roles, created company-wide volume reporting, and is currently working with his team on an inventory tracking and management system.

**Arlene O'Neil**

Arlene has dedicated more than two decades to clinical diagnostics, serving as a Medical Technologist, a Laboratory Scientist, and as a Laboratory Director. With her degree in Medical Technologies, Arlene has advanced the operations of numerous hospitals and medical centers. She is well versed in CLIA, CAP and COLA regulations, and she is an expert on instrument implementation, verification and validation. In addition to her vast knowledge in laboratory settings, Arlene also has vast experience with vendor relationships, inventory management, and cost control.

Coming to Corridor in 2020 to oversee the facilitation of COVID-19 testing, Arlene has quickly become a strong member of the team. In short order she has been able to assemble a qualified team, develop operating procedures, policies and systems. With her expertise on process efficiencies she has added tremendous value to the leadership team, and the company as a whole.

## III. <u>FINANCIAL INFORMATION</u>

**A.     PRE-BANKRUPTCY**

1.  Corridor Medical Services, Inc.

| Category | 2016 | 2017 | 2018 |
|---|---|---|---|
| Gross Receipts | 15,074,714 | 14,840,418 | 17,494,353 |
| Total Income | 15,096,609 | 14,851,719 | 10,608,384 |
| Deductions | 13,452,188 | 14,839,525 | 6,471,402 |
| Ordinary     Business | 1,644,421 | 12,194 | 4,136,982 |

| | | | |
|---|---|---|---|
| Income | | | |

2. Correctional Imaging Services, LLC.

| Category | 2016 | 2017 | 2018 |
|---|---|---|---|
| Gross Receipts | 2,623,481 | 2,541,742 | 3,540,304 |
| Total Income | 2,623,481 | 2,541,742 | (32,370) |
| Deductions | 2,600,649 | 2,561,078 | 173,586 |
| Ordinary     Business Income | 22,832 | (19,336) | (205,956) |

3. CMMS Labs, LLC

| Category | 2016 | 2017 | 2018 |
|---|---|---|---|
| Gross Receipts | 0 | 1,670,631 | 3,822,505 |
| Total Income | 0 | 1,670,631 | (386,857) |
| Deductions | 719,331 | 2,932,203 | 5,876,367 |
| Ordinary     Business Income | (719,331) | (1,261,572) | (6,263,224) |

## B.      FINANCIAL RESULTS SINCE FILING BANKRUPTCY

The Debtors have has filed Monthly Operating Reports for the months of December 2018 through June 2020.  A copy of the pertinent parts of the Monthly Operating Report for June 2020, which summarizes cash flow through June 30, 2020, is attached hereto as Exhibit A.  The cumulative results since filing reported in the Operating Report are as follows:

| | Corridor | Correctional | CMMS Lab |
|---|---|---|---|
| Revenues | 21,190,728 | 4,915,853 | 4,377,350 |
| Cost of Revenues | | 4,435,674 | |
| Gross Profit | 21,190,728 | 480,179 | 4,377,350 |
| Selling & Marketing | 635 | | |
| General &Administrative | 19,154,545 | 195,951 | 4,825,902 |
| Insider Compensation | 215,913 | 0 | |
| Professional Fees | 121,013 | 12,000 | 25,000 |
| Bad Debts | 4,482,414 | 667,952 | 2,051,851 |
| Other | | 25,413 | |
| Net Income before income taxes, depreciation | (2,783,792) | (421,137) | (2,525,403) |
| Interest | 126,523 | | 2,500 |
| Depreciation | 495,796 | | |
| Other (Income) Expense | (4,353,348) | | |
| Other Items | (369,607) | 135,453 | 32,713 |
| Net Income Before Taxes | 1,316,844 | (556,590) | (2,560,616) |

C.    **Estimated Future Income and Expenses**

The Reorganized Corridor Medical Services will pay all Allowed Claims from future income generated and a post-confirmation loan from Horizon Bank. Debtor's pro forma under the Plan is attached as Exhibit B.

## IV.  ANALYSIS AND VALUATION OF PROPERTY

A.    **REAL PROPERTY**

The Debtors do not own any real property.

B.    **PERSONAL PROPERTY**

The following charts summarize the property owned by each of the Debtors as of the Petition Date and as of June 30, 2020:

1.  Corridor Medical Services, Inc.

| Category | 11/30/18 | 6/30/20 |
|---|---|---|
| Cash | 66,657 | 800,268 |
| Accounts Receivable | 3,317,438 | 1,499,530 |
| Other Current Assets | 8,200 | 8,200 |
| Property Plant & Equipment less depreciation | 902,813 | 171,428 |
| Investment in Subsidiary | 208,788 | 208,788 |
| Loan to CMMS | 6,219,048 | 6,219,048 |
| Other | 187,540 | 187.120 |
| Total | 10,910,394 | 8,613,188 |

2.  Correctional Mobile Medical, LLC

| Category | 11/30/18 | 6/30/20 |
|---|---|---|
| Cash | 1,978 | 9,752 |
| Accounts Receivable | 2,191,231 | 300,313 |
| Other | | |
| Security Deposits | 1,200 | 1,200 |
| Total | 2,194,409 | 311,625 |

3.  CMMS Labs, LLC

| Category | 11/30/18 | 6/30/20 |
|---|---|---|
| Cash | 460 | 26,510 |

| Accounts Receivable | 3,228,295 | 277,428 |
|---|---|---|
| Other | | |
| Security Deposits | 2,393 | 7,881 |
| Total | 3,231,148 | 311,819 |

## C.    LIQUIDATION VALUE

One of the requirements to confirm a plan of reorganization is that creditors receive at least as much as they would under chapter 7 liquidation, unless the parties agree to different treatment. This does not mean that the Debtor's assets will be liquidated.  Rather, it is intended to compare the payments under the Pan to the projected payments under a hypothetical liquidation under Chapter 7.

In a chapter 7 liquidation, a Trustee would be appointed to liquidate the Debtor's property and pay the claims of creditors.  Property subject to liens would either be sold for enough to pay the liens or foreclosed upon by the creditor.  Claims and liens could be objected to.  Creditors would have to file proofs of claim (if they had not previously done so) if the chapter 7 trustee determined that there were any assets that might be liquidated to pay creditors or their claims would not be allowed.  Once the property was liquidated and secured claims were paid, the claims would be paid in the following order:

- First, expenses of the chapter 7 Trustee would be paid;
- Second, expenses incurred during the chapter 11 case and allowed by the court (including post-petition loans) would be paid;
- Third, allowed priority creditors would be paid; and
- Fourth, any remaining funds would be divided pro-rata among the unsecured creditors.

Debtors have prepared a separate liquidation analysis for each company which is attached as Exhibit C.  Debtors assumed that cash would be recoverable at full value, accounts receivable would be collectible at 25% and Property, Plant and Equipment would yield 10%.  The discount on accounts receivable reflects the fact that by the time of liquidation most of the remaining receivables would be older and more doubtful of collection.  The low value for Property, Plant and Equipment reflects the fact that used equipment has little resale value.  Analyzing each Debtor separately, there would be no funds to be distributed beyond the level of secured creditors.

## V.  SUMMARY OF PLAN OF REORGANIZATION

## A.    OVERVIEW OF THE PLAN

The Plan proposes to substantively consolidate the three Debtors. Corridor Medical Services, Inc. will be the surviving entity.  Generally the Reorganized Debtor shall continue operating mobile x-ray, ultrasound and other services for healthcare, detention and correctional facilities.  It will also manage Covid-19 testing for another laboratory.  The Reorganized Debtor

will pay creditors with a post-confirmation loan from Horizon Bank and cashflow generated from operations.

## B.    ANALYSIS AND TREATMENT OF CLAIMS

The Debtors' analysis of the claims in the case is attached as Exhibit D. The plan proposes to treat creditors as set forth below.

### Class 1—Allowed Administrative Expense Claims.[1]

(a)    Class 1 consists of all Administrative Expense Claims (including, but not limited to, those arising under 11 U.S.C. § 503(b)(9)).

(b)    Unless otherwise agreed or as set forth herein as a result of a prior agreement, each holder of an Allowed Administrative Expense Claim shall be paid the amount of its Allowed Administrative Expense Claim on the later of the Effective Date or within seven (7) days after the date that a Final Order is entered approving the Administrative Expense Claim, unless otherwise agreed to by and between the Debtor and the holder of such claim.

(c)    No Administrative Expense claims, except for U.S. Trustee's Fees and expenses incurred in the ordinary course of operating Debtors' business, shall be paid except as approved by Court Order. Proofs of claim asserting Administrative Expense Claims, even if not objected to, shall not be sufficient to constitute approval of an Administrative Expense Claim.

(d)    Allowed Fee Claims incurred through Confirmation of professionals retained by the Debtor and of the Debtor will be paid upon entry of an Order by the Bankruptcy Court approving same with such fees to be paid on the later of the Effective Date or within seven (7) days after entry of a Final Order approving said Claim unless the parties agree to a later date. After the Confirmation Date, the Debtor and his professionals may estimate fees necessary to complete these cases through the entry of a Final Decree.

(e)    Claims for United States Trustee's fees and expenses incurred in the ordinary course of business will be paid by the Debtor as they come due, both before and after the Effective Date.

### Class 2—Priority Claims of Employees.

(a)    Class 2 consists of Priority Claims of Employees under 11 U.S.C. §507(a)(4). There is one claim for $1,339.96 within this class.

(b)    Class 2 creditors shall receive payment of the amount of their Allowed Claims on the Effective Date unless the creditor agrees otherwise.

(c)    Class 2 is not impaired.

### Class 3—Priority Claims for Patient Refunds.

---

[1] While administrative and priority claims are usually not "classified", the proponent of the Plan has done so in this case for ease of reference; the "classification" of these claims does not alter the statutory rights of such claimants under the Bankruptcy Code.

(a)     Class 3 consists of Priority Claims for Patient Refunds under 11 U.S.C. § 507(a)(7). There are 55 claims totaling $14,730.58 within this class.

(b)     Class 3 creditors shall receive payment of the amount of their Allowed Claims on the Effective Date unless the creditor agrees otherwise.

(c)     Class 3 is not impaired.

## Class 4—Priority Tax Claims

(a) Class 4 consists of Priority Tax Claims under 11 U.S.C. § 507(a)(8). There are two claims totaling $46,389.15 in this class.

(b) Class 4 creditors shall receive payment of the amount of their Allowed Claims in equal monthly installments including interest at the applicable statutory rate over a period beginning on the Effective Date with the final payment due on the date which is five years after the Petition Date.

(c) Any taxes arising Post-Petition shall be paid as they come due.

(d) Class 4 is impaired.

## Class 5—Secured Claims of Ad Valorem Taxing Authorities

(a) Class 5 consists of the Secured Claims of Ad Valorem Taxing Authorities.

(b) For purposes of voting, all *ad valorem* taxes within a single county shall consist of a separate subclass as follows:
(i)  Bexar County
(ii) Hays County
(iii)Harris County
(iv)Travis County
(v)  Tarrant County
(vi)Webb County

There are eight claims totaling $103,688.55 in this class, some of which have been satisfied from sale of property during the case.

(c) Any *ad valorem* tax claims that arose Pre-Petition which have not been paid from the sale of personal property by the Effective Date shall retain their liens and shall be paid in full on the later of the Effective Date or within seven (7) days after an Order allowing the claim becomes final and non-appealable.

(d) *Ad valorem* taxes that have arisen Post-Petition have been and will continue to be paid as they come due.

(e) Class 5 is not impaired.

## Class 6—Secured Claim of Pioneer Bank

(a)     Class 6 consists of the Secured Claim of Pioneer Bank.

(b)     On or about June 27, 2020, Pioneer Bank was paid $700,000 and assigned all its right, title and interest in the Debtor's notes and collateral to Corridor.

Corridor shall retain its liens until its Allowed Claim is paid in full.

(c) Debtor as holder of the Pioneer notes shall be entitled to apply for allowance of Pioneer's post-petition fees and costs pursuant to 11 U.S.C. § 506(b). Any fees and costs allowed by the Court shall become part of the Allowed Claim of Pioneer Bank.

(d) Class 6 shall be paid by the release of the blanket lien on Debtor's collateral filed by Pioneer Bank after the Plan is substantially consummated.

(e) Class 6 is impaired.

## Class 7—Secured Claim of Bank United, SBF

(a) Class 7 consists of the Secured Claim of Bank United, SBF.

(b) Class 7 has been paid in full through adequate protection payments during the pendency of the case and shall not receive any distribution under this Plan.

(c) Class 7 is not impaired.

## Class 8—Secured Claims of Toyota Motor Credit

(a) Toyota Motor Credit is the secured creditor on 17 separate vehicle loans as follows:

| Claim # | Vehicle | POC Amount |
|---|---|---|
| 62 | 2014 Scion #6109 | $5,856.56 |
| 65 | 2014 Scion #5949 | $5,856.56 |
| 66 | 2015 Scion #8068 | $5,782.54 |
| 69 | 2015 Scion #0274 | $5,514.31 |
| 70 | 2015 Scion #8803 | $5,784.12 |
| 72 | 2015 Scion #1041 | $5,441.86 |
| 73 | 2016 Corolla #8141 | $9,628.68 |
| 74 | 2015 Scion #1372 | $5,353.03 |
| 76 | 2014 Scion #5671 | $5,856.56 |
| 77 | 2016 Corolla #8110 | $9,322.16 |
| 78 | 2015 Scion #7024 | $6,385.83 |
| 79 | 2015 Scion #1295 | $6,326.36 |
| 81 | 2015 Scion #1116 | $6,326.36 |
| 82 | 2015 Scion #1241 | $6,326.36 |
| 85 | 2014 Scion #5456 | $5.856.99 |
| 86 | 2015 Scion #7406 | $5,412.91 |
| 89 | 2016 Corolla #6324 | $9,322.16 |

(b) All the above vehicles *except* for the 2015 Scion #0274 shall be surrendered in full satisfaction of the Claims for these vehicles filed by Toyota.

(c) The balance due, if any, on 2015 Scion #0274 shall be paid on the Effective Date.

(d) The Class 8 claims are impaired.

**Class 9—Secured Claim of Ford Motor Credit**

(a)  Class 9 consists of the Secured Claim of Ford Motor Credit. Ford Motor Credit filed a claim in the amount of $10,689.92.  Crediting the adequate protection payments made during the pendency of the Case, the claim has been paid down to below $1,000.00.

(b)  The claim is secured by a lien upon a 2015 Ford F150. Ford shall retain its lien until its claim is paid in full.

(c)  The Debtor has received permission to sell the 2015 Ford F150. If the truck has not been previously sold, the Debtor shall pay the remaining balance, if any, on the Effective Date.

(d)  Class 9 is not impaired.

**Class 10— Claims of Great America Financial Services Corp.**

(a)  Class 10 consists of the Claims of Great America Financial Services Corp. arising from pre-petition contracts entered into with the Debtor for equipment used in the operation of CMMS Lab.  Each contract was secured by the equipment that was the subject of the contract.  On April 4, 2019, the Court approved the rejection of Contract Nos. 1109528 and 919-134253 and set June 30, 219 as a bar date for rejection claims.  No rejection claims were filed.

(b)  Debtor is assuming and paying on Contract Nos. 1275421 and 1331563. The equipment in both these contracts is primarily copiers and peripherals. Debtor is current on payments due under these two contracts and will continue to make the contractual payments until the expiration of these contracts—August 25, 22 on Contract No. 1275421 and February 28, 2022, on Contract No. 1331563.

(c)  Class 10 is secured by a lien upon the surrendered equipment and the Kyocera copiers, printers, scanners and related equipment. Great America shall retain its liens on the equipment acquired under Contract Nos. 1275421 and 1331563 until all payments are made, at which time the equipment shall vest in Debtor free and clear of lien and encumbrances

(d)  Class 10 is impaired

**Class 11—Claims of Sterling Bank**

(a) Class 11 consists of the Claims of Sterling Bank. Sterling Bank filed a proof of claim in the amount of $586,280.46.  The claim was filed as a purchase money claim for medical equipment valued at $527,100.  The Debtor reserves the right to seek a valuation of this claim.  The secured portion of the claim shall be a Class 11 claim.  If a valuation reflects that Sterling is undersecured, the unsecured portion of the claim shall be paid *pro-rata* along with Class 16 creditors.

(b) Contract 919-0134253 between Corridor and Sterling was rejected by Court Order on April4, 2019.  No rejection claim was filed by Sterling on or before the June 30, 2019 bar date.  The equipment covered by this contract has or is being surrendered.  Sterling will receive no distributions under this Plan with respect to this contract.

(c) On April 8, 2019, the Court entered an Order agreed to by the Debtor and Sterling.  The remaining two equipment contracts, Contract No.133524 and Contract No. 134270, were to be paid over sixty (60) months with five percent (5%) interest.  Payments were to begin in May of 2019 and continue after confirmation or dismissal.

(d) Sterling shall retain its lien on the equipment covered by Contracts Nos. 133524 and 134270 until the payment set forth in (c) are made in full, at which time the equipment covered by the contracts shall vest in the Debtor free and clear of any liens and encumbrances.

(e) Class 11 is impaired.

## Class 12—Secured Claim of Complete Business Solutions Group (CBSG)/Par Funding/New York Unity Factor

(a) Class 12 consists of the claim of CBSG/Par Funding/New York Unity Factor.

(b) Class 12 is based upon a Merchant Cash Advance Agreement. CBSG filed a proof of claim in the amount of $492,834.10 and continued collection efforts post-petition.

(c) The Debtor asserted claims against CBSG/Par Funding/New York Unity Factor.

(d) The Debtor and CBSG reached an agreement as to treatment of its claim as follows:

  (i) CBSG will have an allowed secured claim for $100,000 (which shall be the only allowed claim on behalf of CBSG and its related parties. CBSG has received post-petition but not returned to Debtor at least $66,000, which shall be retained against this claim.  On the Effective Date of the Plan, Debtor shall pay the remainder due on the allowed claim of CBSG with no interest.

  (ii) Any receivables received by CBSG after September 1, 2019, will be forwarded to the Debtor by ACH or in certified funds by overnight delivery within seven (7) days of receipt.  Debtor will retain the amount it receives from CBSG in its attorneys' trust account until the Effective Date of the Plan.  On the Effective Date of the Plan, CBSG will receive the difference between what it has received post-petition between December 1, 2018 and September 1, 2019 but not returned and $100,000.00.

  (iii) CBSG and New York Unity Factor will be enjoined from soliciting and accepting any further payments on account of Debtor's accounts receivable; and if any are received, they shall be sent to Debtor as

21

set forth in "(ii)", supra.

    (iv)    Upon the entry of the Confirmation Order, New York Unity Factor will release and/or vacate the CBSG Judgment against Debtor and Stephen Nelson and Stephen Nelson will dismiss the Nelson Civil Action.

    (v)    Debtor reserves the right to pursue the difference between the amount claimed by CBSG and that reflected in Debtor's books and records and any violations of the automatic stay subsequent to November 1, 2019 which shall not be covered by this Order or the release contained herein.

    (vi)    This is a settlement of disputed claims and does not constitute the forgiveness of debt as that term is used within the Internal Revenue Code.

    (vii)    If CBSG or New York Unity Factor fail to comply with the injunctive relief contained in the settlement or fails to return funds as set forth herein, it will be required to disgorge all post-petition sums it has received and its allowed claim will be disallowed.

    (viii)    If CBSG or New York Unity Factor fails to comply with the injunctive relief contained in the settlement or fails to return funds as set forth herein, it will also be required to pay $10,000 in attorneys' fees incurred thus far in this matter and any future fees incurred to enforce the settlement.

    (e)    The Claim of CBSG is impaired.

### Class 13—Secured Claims of Merchant Cash Advance Parties/No Claim Filed

    (a)    Class 13 shall consist of the following Merchant Cash Advance which were scheduled by the Debtor as disputed and which did not file a proof of claim. Each of the creditors listed below shall be considered to be a separate class for purposes of voting:

| Sub-Class | Creditor | Debtor | Scheduled Amount | UCC Filing | Disputed? |
|---|---|---|---|---|---|
| a | 1st Merchant Services | Corridor Correctional CMMS Labs | $60,908.27 | Yes-blanket lien | Yes |
| b | Advanced Merchant Services | Corridor | $269,952.00 | | Yes |
| c | Channel Partners Capital | CMMS | $13,333.00 | Yes—Blanket lien | Yes |
| d | EIN Capital | Corridor | Unknown | | Yes |
| e | Everest Business Financing | Corridor | Unknown | | Yes |

| | f | Green Capital | Corridor | $0 | | Yes |
|---|---|---|---|---|---|---|
| | g | GTR Funding Source | Corridor Correctional CMMS Labs | $295,481.38 | Yes—commercial paper and general intangibles | Yes |
| | h | High Speed Capital | Corridor Correctional CMMS Labs | $121,205.75 | Yes—blanket lien | Yes |

(b) Each of the creditors in Class 13 was initially scheduled as undisputed and was changed to disputed in Amended Schedules filed on April 14, 2019. The bar date for filing proofs of claim was June 30, 2019.

(c) The Class 13 creditors shall not receive any distribution and their contracts shall be deemed fully satisfied as to all parties.  Any liens held by these parties will be deemed void and of no force and effect on the Effective Date.

(d) Class 13 is impaired.

### Class 14—Merchant Cash Advance Claims Not Disputed or POC Filed

(a) Class 14 shall consist of Merchant Cash Advance claims which either filed a timely proof of claim or were not disputed by the Debtor. The following creditors, each of which shall count as a separate subclass for purposes of voting, fall within Class 14:

| Subclass | Creditor | Debtor | Schedules | POC Amt. | UCC Filing | Disputed? |
|---|---|---|---|---|---|---|
| a | Fora Financial | Corridor | $117,377.00 | $117,377.80 | Yes-blanket lien | Yes |
| b | Hop Capital | Correctional | $64,974.00 | $95,135.00 | Yes-blanket lien | Yes |
| c | Knight Capital Funding | Corridor | $160,858.88 | $176,541.12 | Yes-blanket lien | Yes |
| d | On Deck Capital | Corridor Correctional CMMS | $163,292.00 | | Yes-blanket lien | No |
| e | Quarter Spot, Inc. | Corridor Correctional | $312,247.36 | $154,453.36 | Yes-blanket lien | Yes |

(b) Class 14 creditors may elect one of the following treatments:

Option 1: The creditor shall be treated as secured and receive 15% of the amount of its Allowed Claim on the Effective Date (or the date upon which the claim becomes an Allowed Claim if later.

Option 2:  The creditor shall be treated as a Class 16 Unsecured Creditor and be paid the full amount of its claim without interest *pro-rata* with the other Class 16 creditors

(c)  Creditors who do not make an election will receive Option 1.

(d)  Any UCC filed on any Class 14 claim will remain in effect until the creditor is paid according to the Plan, at which time it will become void and of no force and effect.

(e)  Class 14 is impaired.

### Class 15—Unsecured Claims of Creditors with Claims of $5,000.00 or Less or Which Elect to Reduce their Claims to $5,000.00

(a)  Class 15 shall consist of Allowed Unsecured Creditors with Claims of $5,000 or less or which elect to reduce their claims to $5,000.00. There are 84 claims totaling $71,476.01 in this class.

(b)  Class 15 creditors shall each receive a single payment equal to 50% of their Allowed Claim on the Effective Date.

(c)  If any Class is creditor opts out of Class 15 in order to be paid in full, it will receive distributions under 5.16(b)(ii).

(d)  Class 15 is impaired.

### Class 16—Unsecured Claims of Creditors with Claims of $5,000.01 or More

(a)  Class 16 shall consist of Allowed Claims of Unsecured Creditors with Claims of $5,000.01 or more. There are 91 claims totaling $8,151,293.49 in this class. However, many of these claims are disputed.

(b)  The Class 16 creditors shall elect one of the following options for distributions under the Plan:

(i) 15% of the creditor's Allowed Claim on the Effective Date; or

(ii) 100% of the creditor's Allowed Claim payable monthly without interest over eighty-four (84) months, beginning on the first day of the fifth month following the Effective Date.

(c)  Class 16 creditors must elect option (i) or (ii) by the Ballot deadline.  If no election is timely made by a creditor, that creditor will be paid under Option 1.

(d)  Class 16 is impaired.

### Class 17—Subordinated Claims

(a)  Class 17 shall consist of Unsecured Claims for redemption of stock in the Debtor which are subordinated pursuant to 11 U.S.C. § 510(b). There are three claims totaling $3,210,768 in this class.

(b)  Class 17 creditors shall receive the full amount of their Allowed Claims

over eighty-four months beginning after Class 16 creditors are paid (approximately month 100 of the Plan) or may elect to receive 15% of the amount of their Allowed Claims on the Effective Date. If no election is made, a Class 17 Creditor will receive payments beginning after Class 16 Creditors are paid.

    (c)    Class 17 is impaired.

## Class 18—Intercompany Claims

    (a)    Class 18 shall consist of unsecured claims by and between the Debtors.

    (b)    All Class 18 claims shall be canceled.

    (c)    Class 18 is impaired.

## Class 19—Equity Interests

    (a)    Class 19 shall consist of the Equity Interests of the Debtors.

    (b)    The Class 19 Equity Interests shall be canceled.

    (c)    Class 19 is impaired.

## C.  FEASIBILITY OF THE PLAN AND RISK TO CREDITORS

Feasibility of the Plan and Risk to Creditors" measures the likelihood that creditors will receive the payments promised to them. The projections attached as Exhibit C indicate that the Reorganized Debtor will be able to perform under the Plan. During bankruptcy, the Debtors have repaid over $2 million in secured debt from operations. Because the Reorganized Debtor will be an operating business, there is always a possibility that business conditions will sour and the Reorganized Debtor will not be able to perform under the Plan.

## D.  REMEDIES FOR DEFAULT

In the event of a default by the Debtors under the Plan and to the extent that the treatment of a particular class does not conflict with the provisions of this paragraph, creditors may exercise any rights granted to them under documents executed in connection with the Plan or any rights available to creditors under applicable non-bankruptcy contract law. In the absence of documents executed to consummate or otherwise evidence the Plan, the Plan itself may be enforced as a contract. Notwithstanding any other provision, any creditor alleging a default in its treatment under the Plan shall give the Debtors twenty-eight days (28 days) notice and an opportunity to cure before exercising any rights available upon default.

In the event of a default by a creditor, the Debtors may enforce this Plan as a contract in a court of competent jurisdiction. The Debtors may escrow payments to any creditor whose claim has not yet been allowed or who defaults under the Plan. In the event of a default, the Debtor shall give the creditor twenty-eight (28) days' notice and an opportunity to cure before exercising this provision.

In the event that the Debtor's case is converted to one under chapter 7 after consummation of the Plan, these assets will revest in the Bankruptcy Estate and be subject to administration by the chapter 7 Trustee.

## E.    CLAIMS ALLOWANCE PROCEDURE

No Administrative Expense Claims shall be allowed except pursuant to Court Order.  Any application for allowance of an Administrative Expense Claim shall be filed within twenty-eight (28) days after the Confirmation Date or shall be barred.  Any claims for reimbursement of fees and expenses pursuant to 11 U.S.C. § 506(b) shall be filed within this same period of time or shall be barred.

Any Claims arising from the rejection of unexpired leases or executory contracts shall be filed by the date specified in the order rejecting such lease or contract.  Likewise, cure claims shall be filed within twenty-eight (28) days after the Confirmation Date or shall be barred unless agreed otherwise.

A person who is found to have received a voidable transfer shall have twenty eight (28) days following the date from which the order ruling that such transfer is avoidable or approving the settlement of a suit on an avoidable transfer becomes a Final Order in which to file a Claim in the amount of the settlement or the avoided transfer, whichever is less.  Similarly, the claim of any party relating to contribution or indemnity against the Debtor which is contingent as of the Effective Date shall not be allowed unless:  (i) demand is made upon said creditor; (ii) the creditor satisfies the obligation in whole or in part; (iii) the creditor files a claim according to the procedures set forth in the Plan; and (iv) such Claim becomes an Allowed Claim.

A claim to which an objection has been made shall at the request of the Creditor be estimated by the Court for the purposes of voting on the Plan.

## F.    ASSUMPTION AND REJECTION OF LEASES AND CONTRACTS

Under the Bankruptcy Code, the Trustee must assume or reject any leases or contracts to which it is a party.  The Debtor has previously assumed the following leases and contracts:

| Landlord | Leasehold Property Location/ Contract Type |
|---|---|
| BEARDEN MGT., INC. F/B/O DUTTON DRIVE 3.44, LTD. 223 Hull Lane Sugarland, Texas 77498 | 1900 Dutton Drive, Suite 101 San Marcos, Texas 78646 |
| BRIARWOOD GROUP, LTD P.O. Box 2031 Tyler, Texas 75710 | Energy Center 719 W. Front St., Suite 45 Tyler, Texas |

| | |
|---|---|
| GULF TWES HOUSTON, LLC<br>1335 Regents Park Dr.<br>Suite 135<br>Houston, Texas 77058 | 8866 Gulf Freeway Bldg Suite 280<br>Houston, Texas 77017 |
| DURON PROPERTIES, LLC<br>110 Caballo Drive<br>Del Rio, Texas 78840 | Villa Del Sol Plaza<br>2107 Veterans Blvd, Ste 4 Del Rio, Texas |
| KILIMANJARO CORP.<br>12921 IH-10 East<br>Orange, Texas 77630 | 1091 N. Main, Suite 201 Vidor, Texas |
| MR. V MGT RENTALS, LLC<br>7220 A Bob Bullock Loop<br>Suite 4-A<br>Laredo, Texas 78041 | 7720 Bob Bullock Loop Suite 310<br>Laredo, Texas 78041 |
| Meritain Health, Inc. | Administrative Services Agreement |

The Debtor has previously rejected the following leases and contracts:

| Debtor | Lessor/Servicer | Leasehold Property Location/ Contract Type | Contract Date | Rejection Date |
|---|---|---|---|---|
| CMMS | Rajabi, LLC<br>3307 Acorn Wood Way<br>Houston, TX 77059 | 202 N. Texas Ave.,<br>Suite 100 and 200,<br>Webster, TX | 12/01/2018 | 1/31/2019 |
| CMMS | 1603 Babcock, LLC<br>c/o MSG Management, Inc.<br>13750 San Pedro, Suite B10<br>San Antonio, TX 78232 | 1603 Babcock, Suite<br>103, San Antonio,<br>Texas | 10/01/2018 | 01/31/2019 |
| Corridor | South Texas Maintenance<br>and Rental<br>1325 Dixieland Rd<br>Harlingen, TX 78552<br>Attn: Dixieland Office | 1329 Dixieland Rd.<br>Harlingen, TX 78552 | | 01/31/2019 |
| Corridor | Rydell Sanger, LLC<br>2223 Austin Ave., Suite C<br>Waco, TX 76701-1949 | 6801 Sanger Ave.,<br>Suite 225<br>Waco, TX 76710 | | 01/31/2019 |
| Corridor | T & J Building "A" Limited<br>LLP<br>2132 Grand Lake Pkwy<br>Leander, TX 78641 | 1150 Lake Drive, Suite<br>102<br>Lakeway, TX 78734 | | 01/31/2019 |
| Corridor | Victoria Retail Group<br>c/o Todd Routh/Wells<br>Fargo Bank<br>PO Box 260173<br>Dallas, TX 75326 | 2701 N. Azalea, Suite<br>3A<br>Victoria, TX 77901 | | 01/31/2019 |
| Corridor | Broadway National Bank<br>Attn: Andrew Ozuna<br>PO Box 17001<br>San Antonio, TX 78217 | 8626 Tesoro Dr., suite<br>210<br>San Antonio, TX<br>78217 | | 01/31/2019 |

| CMMS | Bestcare Laboratory Services | Asset Purchase Agreement | 09/20/18 | 01/14/19 |
|---|---|---|---|---|
| CMMS | 1314 Management LLC 1814 Lake Street Ste 100 Fort Worth, TX 76102 | 3855 Business Park Dr Ste 190 Amarillo, TX | 01/01/2018 | 01/31/2019 |
| CMMS | Capshaw Capital 4708 67th Street Lubbock, Tx 79414 | 4702 B 67th Street Lubbock, TX 79414 | | 01/31/2019 |
| Corridor | Great America Financial Services | Agreement No. 1109528 | | 03/01/19 |
| Corridor | Sterling National Bank | Contract No. 919-0134253 | | 03/01/19 |
| Corridor | Ortho-Clinical Diagnostics, Inc. | (i) Supply Agreement entered into on or about January 19, 2016, and amended May 16, 2017; (ii) Master Service Agreement entered January 19, 2016; and (iii) Service Agreement entered into on or about January 19, 2016. | | 03/01/19 |
| CMMS | Judah Reed 1255 Country Club Rd., Suite D Santa Teresa, NM 88008 | 2211 E. Missouri Ave., Suite 354, El Paso, TX | 11/10/17 | 5/31/19 |
| Corridor | RCI Westway, LLC PO Box 677846 Dallas, TX 75287-7846 | 4630 Beltway Place, Suite 250-255 Arlington, TX 76018 | 10/27/15 as modified on 3/7/17 and 5/9/17 | 6/30/19 |

The Debtor shall assume the following leases and contracts:

| Counterparty | Description |
|---|---|
| Various | Assisted living facility contracts |
| Various | Home health contracts |
| Various | Hospice contracts |
| Enterprise Fleet Management | Vehicle leases |
| Great American | Lease of 4 Savin and 2 Kyocera copiers |

The Debtor shall reject the following leases and contracts:

| Clearlake Apollo<br>1335 Regents Park Dr., Suite 135<br>Houston. TX 77058 | 1115 Gemini Street, Suite 100<br>Houston, TX 77058 |
|---|---|
| Beckman Counter, Inc. | Reagent Rental Agreement |
| Salesforce.com<br>San Francisco, CA 94105 | Software lease |
| Verizon | Phone contract |

## G.  RELEASES

The Plan includes provisions which restrict claims against parties liable with the Debtor as follows:

*Third Party Obligations.  To the extent that any third party is jointly liable with the Debtor upon a Claim, whether by contract or by operation of law, such obligation shall remain in force with respect to the Claim as modified by this Plan but not otherwise. (To the extent that a Claim is classified in more than one class, the liability of the third party shall extend to the obligations under each applicable class.)  All guarantees and other obligations shall be deemed modified to reflect the restructuring of the primary obligations under this Plan.  If the Plan is confirmed, a creditor may not enforce liability under a guaranty or other third party claim unless the Debtor defaults under the Plan.  In the event of default, only the amount owing under the Plan shall be recovered from the guarantor.  This provision is intended to apply even to creditors who had previously recovered judgments against the guarantor.*

The Plan also contains a permanent injunction as follows:

**Permanent Injunction.** *Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.*

## H.      RETENTION OF JURISDICTION

After confirmation of the plan, the Court will retain jurisdiction to the extent provided by 28 U.S.C. § 1334.  Basically, this means that the Court will retain jurisdiction over matters relating to the Plan and to rule on any matters which are still pending in the case.

## I.      POST-CONFIRMATION PROCEDURE

After confirmation of the Plan, the Court will rule upon any timely filed objections to claims and applications for compensation of professionals.  Once the court has ruled upon these matters and distributions have begun, the Reorganized Debtor will file an application for final decree.  The Plan requires the Debtors to file its application for final decree within six (6) months after confirmation, although the Debtors anticipate that this will occur sooner.  Following the Effective Date, the Reorganized Debtor will be liable for all quarterly fees that become due to the United States Trustee under 28 U.S.C. § 1930(a)(6).

## VI.  <u>ALTERNATIVES TO THE DEBTOR'S PLAN</u>

The alternatives to a Plan of Reorganization in this case are: (i) conversion to a chapter 7 liquidation; and (ii) dismissal of the bankruptcy case.

### A.      CONVERSION

In the event of a conversion to chapter 7, the Debtors would close their business and a trustee would liquidate the assets of the Debtors. As shown in the liquidation analysis in Section IV(C), unsecured creditors would not receive any distribution in a liquidation. The Debtors' plan is far superior to this result.

### B.      DISMISSAL

In the event that the cases were dismissed, creditors would be free to resume collection activities against the Debtors.  Since the Debtors filed bankruptcy in response to collection activities, this would likely result in an uncontrolled scramble for the Debtors' assets.

## VII.  <u>RELATIONSHIP OF DEBTOR WITH AFFILIATES</u>

Under the Bankruptcy Code, the term "affiliate" refers to an entity which directly or indirectly controls with power to vote twenty (20) percent or more of the securities of the Debtor, a corporation twenty (20) percent or more of whose outstanding voting securities are directly or

indirectly controlled by the Debtor, a person whose business is operated under a lease or operating agreement by a Debtor or a person substantially all of whose property is operated under an operating agreement with the Debtor or an entity that operates the business or substantially all of the property of the Debtor under a lease or operating agreement.

Stephen Nelson is the only person who qualifies as an affiliate of any of the Debtors. During the year prior to bankruptcy, he was paid $130,332.59 by Corridor. During the case he has been paid at a rate of $150,000 per year. He did not hold any pre-petition claims against Corridor. He also has the right to be indemnified by the Debtors in the event that he is required to pay any guaranteed debt.

## VIII. <u>TAX CONSEQUENCES</u>

The transactions contemplated by confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to the creditor or interest holder.

An analysis of federal income tax consequence of the plan to creditors, interest holders, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. The Debtor has not requested a ruling from the Internal Revenue Service or an expert opinion with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on whether, for federal income tax purposes, the obligation from which a creditor's claim arose constitutes a "security." The determination as to whether an obligation for which a creditor's claim arose constitutes a "security" for federal income tax purposes is complex. It depends on the facts and circumstances surrounding the origin and nature of the obligation. Generally, corporate debt obligations evidenced by written instruments with maturities, when issued five (5) years or less, or arising out of the extension of trade credit, do not constitute "securities," whereas corporate debt obligations evidenced by written instruments with original maturities often (10) years or more constitute "securities." Although it appears that most of the creditors' claims do not constitute "securities," the Debtors express no view with respect to whether the obligation for which a particular creditor's claim arose constitutes a "security" for federal income tax purposes. Creditors are urged to consult their own tax advisor in this regard.

Generally, creditors whose claims arise from obligations that do not constitute "securities" or whose claims are for wages or services will be fully taxable exchanges for federal income tax purposes. Such creditors who receive solely cash in discharge of their claims will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the creditor in respect of its claim (other than any claim for accrued interest) and (ii) the creditor's tax basis in its claim (other than any claim for accrued interest). For federal income tax purposes, the "amount realized" by a creditor who receives solely cash in discharge of its claim will be the amount of cash received by such creditor. Where gain or loss is recognized by a creditor, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss

will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which a claim arose has been held for more than six (6) months, and whether and to what extent the creditor has previously claimed a bad debt deduction.  The capital gains deduction for individuals and the alternate tax for corporate net capital gains have been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates.  However, the definitions of long-term and short-term capital gain or loss have to be repealed.

To the extent any amount received (where cash or other property) by a creditor is received in discharge of interest accrued on its claim during its holding period, such amount will be taxable to the creditor as interest income (if not previously included in the creditor's gross income). Conversely, a creditor will recognize a deductible loss (or, possible, a write-off against a reserve for bad debts) to the extent any interest accrued on its claim was previously included in the creditor's gross income and is not paid in full.

**THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER.  THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER.  NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.**

## IX.  PENDING AND POTENTIAL LITIGATION

### A.    PENDING PRE-BANKRUPTCY LITIGATION

Prior to bankruptcy, the Debtors were subject to numerous suits seeking to collect debts which are summarized below:

| Case No. | Court | Plaintiff | Defendant | Status |
|---|---|---|---|---|
| 18-525 | Hays County State District Court | County of Hays | Corridor | Pending |
| 18-0646 | Hays County State District Court | Quest Diagnostic Clinical Laboratories, Inc. | Corridor | |
| 2018-01342JCT | Court of Common Pleas of Chester County | De Lage Landen Financial Services | Corridor | |
| 2018-008348-3 | Tarrant County Court | R Squared Partners | Corridor | Non-suited |

| 18-2405 | Hays County State District Court | United Health Care | Corridor | Pending |
|---|---|---|---|---|
| 8:18-cv-02701-PX | U.S. District Court for the District of Maryland | Cirrus DX, Inc. | Corridor | Partial Default Judgment; not final |
| 2018-CA-001217-0 | Orange County Circuit Court, Florida | Meridian Teleradiology | Corridor | Pending |
| 501147/2018 | New York Supreme Court, Putnam County | Green Capital Funding | Corridor Stephen Nelson | Judgment |
| 18-150904 | New York Supreme Court | New York Unity Factor, LLC | Corridor Stephen Nelson | Judgment |
| 6047777728/2018 | New York Supreme Court, Nassau County | Fora Financial Advance, LLC | Corridor Stephen Nelson Cherub Nelson | |
| 18-150870 | New York Supreme Court, Richmond County | GTR Source, LLC | Corridor Correctional CMMS Lab Stephen Nelson | Judgment |
| EF004830-2018 | New York Supreme Court, Orange County | EBF Partners, LLC | Corridor Stephen Nelson | Judgment |
| 1:18-cv-05497 | U.S. District for the Southern District of New York | United Healthcare Insurance | New York City Marshall Stephen Biegel Corridor Correctional CMMS | Agreed Judgment |
| 1:16-cv-00890 | U.S. District Court for the Western District of Texas | Hansen | Corridor | Concluded |
| 013CL-18003209-00 | Virginia Circuit Court, Arlington County | QuarterSpot, Inc. | Correctional | Pending |

Each of the suits which remain pending will be resolved by the Plan. Upon payment under the Plan, any claims or judgments against third parties will be deemed satisfied.

## B. CLAIMS CREATED UNDER THE BANKRUPTCY CODE

There are four primary types of actions established by the Bankruptcy Code for the benefit of bankruptcy estates: (1) certain actions which could be brought by trustees, creditors or a good faith purchaser under 11 U.S.C. § 544, (2) actions to recover avoidable preferences under 11 U.S.C. § 547, (3) actions to recover fraudulent conveyances under U.S.C. §548 and (4) actions to recover unauthorized post-petition transfers under U.S.C. § 549. A summary of these types of causes of action are listed below and, where possible, specific potential causes of action noted.

### 1. Preferences.

Section 547 allows a Trustee to recover "voidable preferences"—*to wit,* payments made within ninety (90) days prior to bankruptcy (or within one (1) year if made to an insider) on an antecedent debt while the Debtor is insolvent which allows a creditor to recover more than it would have if the payment had not been made and the Debtor's assets were liquidated under chapter 7. Certain payments are protected from recovery as preferences. These include payments made in the ordinary course of business or upon ordinary business terms and payments representing a substantially contemporaneous exchange.

### 2. Fraudulent Conveyances.

Section 548 allows a Trustee to recover certain transfers made within two (2) years of the Petition Date while the Debtor was insolvent which either was made with fraudulent intent or was made without receiving reasonably equivalent value, as well as certain transfers avoidable under State law.

### 3. Other Claims Created By the Bankruptcy Code.

Bankruptcy Code § 549 permits the Trustee to avoid a transfer of property that was not authorized under title 11 or the Court.

The Debtors are presently pursuing the following suits:

| Adv. No. | Date Filed | Defendant(s) | Relief Sought | Disposition |
|---|---|---|---|---|
| 20-1009 | 1/10/20 | Green Capital Funding and Max Recovery Group, LLC | Recover preferential transfers totaling $77,569.19 | Pending; agreed to settle for $15,500 |
| 20-1010 | 1/10/20 | MCA Recovery, LLC and High Speed Capital, LLC | Recover preferential transfers totaling $96,945.12 | Pending |
| 20-1030 | 6/1/20 | Rapid Radiology, Inc. | Recover transfers | Pending |

34

The Debtors do at this time not intend to pursue any additional avoidance actions created by the Bankruptcy Code.

### C.     NON-BANKRUPTCY CAUSES OF ACTION

The Debtors reserve the right to pursue any causes of action created under state law to collect amounts owing to the Debtors.

As discussed above, the Debtors believe that they have claims against Blue Cross/Blue Shield. The Debtors have also made demand for the following accounts receivable and intend to file suit to collect these amounts:

| No. | Facility | Amount Demanded | Resolution/Comments |
|---|---|---|---|
| 1 | Village Creek Nursing Home | $51,804.28 | Demand 3/6/20 |
| 2 | Villages at Lake Highland | $37,707.21 | Demand 3/6/20; second demand 5/6/20; |
| 3 | Landmark of Plano | $26,831.76 | Demand sent 3/6/20 |
| 4 | Corinth Rehab Suites | $19,185.67 | Demand sent 3/6/20 |
| | TOTAL: | $135,528.92 | |

### .     X  SOLICITATION OF VOTES

The Debtors have devoted substantial effort to prepare this Plan of Reorganization.  The Debtors believe that the Plan represents a fair adjustment of their relationship with the creditors. They believe that the Plan is superior to liquidation or forced sale of its assets outside of bankruptcy.  Therefore, the Debtors request that all parties approve the plan of Reorganization.

DATED:        August 7, 2020.

Respectfully submitted,

**Corridor Medical Services, Inc.**
**Correctional Imaging Servces, LLC**
**CMMS Labs, LLC**

**By:**  ___*/s/Stephen Nelson*_____
                **Stephen Nelson,**
                **Authorized Representative**


Respectfully submitted,

**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expwy, Suite 400
Austin, Texas 78731
(512) 476-9103
(512) 476-9253 (Facsimile)

By:      */s/Stephen W. Sather*_____
                Stephen W. Sather
                State Bar No. 17657520
                Barbara M. Barron
                State Bar No. 01817353

ATTORNEYS FOR DEBTORS

EXHIBIT A

CASE NAME:  Corridor Medical Services, Inc

CASE NUMBER:  18-11569

## STATEMENT OF INCOME (LOSS)

| | MONTH June 2020 | MONTH July 2020 | MONTH August 2020 | MONTH September 2020 | MONTH October 2020 | MONTH November 2020 | Filing to Date |
|---|---|---|---|---|---|---|---|
| REVENUES  (MOR-1) | 351,124.00 | | | | | | 21,190,728.00 |
| TOTAL COST OF REVENUES | | | | | | | 0.00 |
| GROSS PROFIT | 351,124.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21,190,728.00 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | | | | | | | 635.00 |
| General & Administrative | 419,635.00 | | | | | | 19,154,545.00 |
| Insiders Compensation | 8,582.00 | | | | | | 215,913.00 |
| Professional Fees | 0.00 | | | | | | 121,013.00 |
| Bad Debts | | | | | | | 4,482,414.00 |
| Other | | | | | | | 0.00 |
| TOTAL OPERATING EXPENSES | 428,217.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23,974,520.00 |
| INCOME BEFORE INT.,DEPR/TAX (MOR-1) | -77,093.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -2,783,792.00 |
| INTEREST EXPENSE | 16,308.00 | | | | | | 126,523.00 |
| DEPRECIATION | 26,784.00 | | | | | | 495,796.00 |
| OTHER (INCOME)/EXPENSE* | - 141,281.00 | | | | | | -4,353,348.00 |
| OTHER ITEMS** | | | | | | | -369,607.00 |
| TOTAL INT. DEPR & OTHER ITEMS | -98,189.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -4,100,636.00 |
| NET INCOME BEFORE TAXES | 21,096.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,316,844.00 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS) (MOR-I) | $21,096.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,316,844.00 |

* Footnote Mandatory.

** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.

Accrual Accounting Required Otherwise Footnote with Explanation.

MOR-6

Revised (07/01/98

## Footnotes

### Line 20, Other Income

Corridor receives a reimbursement each month from Correctional Mobile Medical Services in and amount equal to 100% of Correctional Revenues, prior to March 2020 reimbursement raet was 88% of Correctional Revenues

**Line 21, Sale of Depreciated assets, $10,000 - February 2020**

Line 21, April 2020 - learned that payroll tax expense in January 2020 was overstated by $94,501.82, when payroll service company was changed.

CASE NAME:  CMMS Lab, LLC
CASE NUMBER:  18-11571

## STATEMENT OF INCOME (LOSS)

| | MONTH June 2020 | MONTH July 2020 | MONTH August 2020 | MONTH September 2020 | MONTH October 2020 | MONTH November 2020 | Filing to Date |
|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | | | | | | | 4,377,350.00 |
| TOTAL COST OF REVENUES | | | | | | | 0.00 |
| GROSS PROFIT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,377,350.00 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | | | | | | | 0.00 |
| General & Administrative | 2,425.00 | | | | | | 4,825,902.00 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | | | | | | | 2,051,851.00 |
| Bad Debts | | | | | | | 25,000.00 |
| Other | | | | | | | 0.00 |
| TOTAL OPERATING EXPENSES | 2,425.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,902,753.00 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | -2,425.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -2,525,403.00 |
| INTEREST EXPENSE | 0.00 | | | | | | 2,500.00 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | 0.00 |
| OTHER ITEMS** | | | | | | | 32,713.00 |
| TOTAL INT, DEPR & OTHER ITEMS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35,213.00 |
| NET INCOME BEFORE TAXES | -2,425.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -2,560,616.00 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS) (MOR-1) | ($2,425.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($2,560,616.00) |

*  Footnote Mandatory.

** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.

Accrual Accounting Required, Otherwise Footnote with Explanation.

**MOR-6**

Revised 07/01/98

CASE NAME: __Correctional Mobile Medical Services, LLC__

CASE NUMBER: __18-11570__

## STATEMENT OF INCOME (LOSS)

| | MONTH June 2020 | MONTH July 2020 | MONTH August 2020 | MONTH September 2020 | MONTH October 2020 | MONTH November 2020 | Filing to Date |
|---|---|---|---|---|---|---|---|
| REVENUES  (MOR-1) | 76,580.00 | | | | | | 4,915,853.00 |
| TOTAL COST OF REVENUES | 148,607.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,435,674.00 |
| GROSS PROFIT | -72,027.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 480,179.00 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | | | | | | | 0.00 |
| General & Administrative | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 195,951.00 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | | | | | | | 12,000.00 |
| Trustee Fees | | | | | | | 25,413.00 |
| Other - Bad Debts | | | | | | | 667,952.00 |
| DEPRECIATION | | | | | | | 0.00 |
| TOTAL OPERATING EXPENSES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 901,316.00 |
| INCOME BEFORE INT./DEPR/TAX (MOR-1) | -72,027.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -421,137.00 |
| INTEREST EXPENSE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | 135,453.00 |
| OTHER ITEMS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 135,453.00 |
| TOTAL INT, DEPR & OTHER ITEMS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 135,453.00 |
| NET INCOME BEFORE TAXES | -72,027.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -556,590.00 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS) (MOR-1) | ($72,027.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($556,590.00) |

*   Footnote Mandatory;

** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.

Accrual Accounting Required, Otherwise Footnote with Explanation.

MOR-6

Revised 07/01/98

Reorg budget with loan payment

Monthly

EXHIBIT B

| | November 2020 | December 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|
| **Beginning Balance - Cash** | $500,000.00 | -$1,203,918.00 | -$1,153,836.00 | $984,164.00 | $1,790,164.00 | $2,185,164.00 | $2,711,164.00 |
| Loan Proceeds | | | $1,500,000.00 | | | | |
| X-Ray Collections | $315,000.00 | $315,000.00 | $3,900,000.00 | $4,000,000.00 | $4,200,000.00 | $4,400,000.00 | $4,600,000.00 |
| Lab Collections | $150,000.00 | $150,000.00 | $1,800,000.00 | $500,000.00 | | | |
| **Total Cash Inflows:** | $965,000.00 | -$738,918.00 | $6,046,164.00 | $5,484,164.00 | $5,990,164.00 | $6,585,164.00 | $7,311,164.00 |
| Salaries and Wages | $250,000.00 | $250,000.00 | $3,000,000.00 | $2,200,000.00 | $2,300,000.00 | $2,400,000.00 | $2,400,000.00 |
| Business Insurance | $3,000.00 | $3,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 |
| Auto Expenses | $25,000.00 | $25,000.00 | $300,000.00 | $300,000.00 | $300,000.00 | $300,000.00 | $300,000.00 |
| Sterling Bank | $6,918.00 | $6,918.00 | $83,000.00 | $83,000.00 | $83,000.00 | $42,000.00 | |
| Equipment maintenance | $1,000.00 | $1,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| Telephone & Communications | $8,500.00 | $8,500.00 | $85,000.00 | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 |
| Rent | $20,000.00 | $20,000.00 | $240,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 |
| Utilities | $2,000.00 | $2,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 |
| Postage & Shipping | $1,000.00 | $2,000.00 | $24,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| Office Supplies/Misc | $4,500.00 | $4,500.00 | $56,000.00 | $41,000.00 | $41,000.00 | $41,000.00 | $41,000.00 |
| Computer/Equipment Software Fees | $6,000.00 | $6,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 |
| Radiology Services | $21,000.00 | $21,000.00 | $300,000.00 | $309,000.00 | $320,000.00 | $330,000.00 | $340,000.00 |
| Loan Payment* | | | $360,000.00 | $360,000.00 | $360,000.00 | $360,000.00 | $360,000.00 |
| Lab Supplies/Replacement equipment | $35,000.00 | $30,000.00 | $420,000.00 | | | | |
| Admin/convenience claims/legal | $285,000.00 | $35,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 |
| Lump sum plan payments | $1,500,000.00 | | | | | | |
| **Total Expense** | $2,168,918.00 | $414,918.00 | $5,062,000.00 | $3,694,000.00 | $3,805,000.00 | $3,874,000.00 | $3,842,000.00 |
| **Ending Cash Balance** | -$1,203,918.00 | -$1,153,836.00 | $984,164.00 | $1,790,164.00 | $2,185,164.00 | $2,711,164.00 | $3,469,164.00 |

Loan terms 1,500,000 7% 60 months

Lab operations anticipated through end of 2021

| | November 2020 | December 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|---|---|---|---|---|
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
| **Beginning Balance - Cash** | $500,000.00 | $296,082.00 | $376,164.00 | $834,164.00 | $1,280,164.00 | $1,415,164.00 | $1,581,164.00 | $1,979,164.00 | $2,577,164.00 |
| X-ray Collections | $315,000.00 | $315,000.00 | $3,900,000.00 | $4,000,000.00 | $4,200,000.00 | $4,400,000.00 | $4,600,000.00 | $4,800,000.00 | $5,000,000.00 |
| Lab Collections | $150,000.00 | $150,000.00 | $1,800,000.00 | $500,000.00 | | | | | |
| **Total Cash Inflows:** | $965,000.00 | $761,082.00 | $6,076,164.00 | $5,334,164.00 | $5,480,164.00 | $5,815,164.00 | $6,181,164.00 | $6,779,164.00 | $7,577,164.00 |
| Salaries and Wages | $250,000.00 | $250,000.00 | $3,000,000.00 | $2,200,000.00 | $2,200,000.00 | $2,400,000.00 | $2,400,000.00 | $2,400,000.00 | $2,500,000.00 |
| Business Insurance | $3,000.00 | $3,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 |
| Auto Expenses | $25,000.00 | $25,000.00 | $300,000.00 | $300,000.00 | $300,000.00 | $300,000.00 | $300,000.00 | $300,000.00 | $300,000.00 |
| Sterling Bank | $6,918.00 | $6,918.00 | $83,000.00 | $83,000.00 | $83,000.00 | $42,000.00 | | | |
| Equipment maintenance | $1,000.00 | $1,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| Telephone & Communications | $8,500.00 | $8,500.00 | $85,000.00 | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 |
| Rent | $20,000.00 | $20,000.00 | $240,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 |
| Utilities | $2,000.00 | $2,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 |
| Postage & Shipping | $1,000.00 | $2,000.00 | $24,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| Office Supplies/Misc. | $4,500.00 | $4,500.00 | $56,000.00 | $41,000.00 | $41,000.00 | $41,000.00 | $41,000.00 | $41,000.00 | $41,000.00 |
| Computer/Equipment Software Fees | $6,000.00 | $6,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 |
| Radiology Services | $21,000.00 | $21,000.00 | $300,000.00 | $309,000.00 | $320,000.00 | $330,000.00 | $340,000.00 | $340,000.00 | $340,000.00 |
| Pre petition debt | | | $540,000.00 | $720,000.00 | $720,000.00 | $720,000.00 | $720,000.00 | $720,000.00 | $720,000.00 |
| Lab Supplies/Replacement equipment | $35,000.00 | $35,000.00 | $420,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $100,000.00 |
| Admin/convenience claims/legal | $285,000.00 | | $50,000.00 | | | | | | |
| **Total Expense** | $668,918.00 | $384,918.00 | $5,242,000.00 | $4,054,000.00 | $4,065,000.00 | $4,234,000.00 | $4,202,000.00 | $4,202,000.00 | $4,352,000.00 |
| **Ending Cash Balance** | $296,082.00 | $376,164.00 | $834,164.00 | $1,280,164.00 | $1,415,164.00 | $1,581,164.00 | $1,979,164.00 | $2,577,164.00 | $3,225,164.00 |

EXHIBIT C

Liquidation Analysis Corridor Medical Services, Inc.

| ASSETS | Value Per MOR | Pct. Recovery | Recovery |
|---|---|---|---|
| Cash | $  800,268.00 | 100% | $   800,268.00 |
| Accounts Receivable | $ 1,499,530.00 | 25% | $   374,882.50 |
| Other Current Assets | $    8,200.00 | 0% | $      - |
| PPE | $  171,428.00 | 10% | $    17,142.80 |
| Investment in Subsidiary | $  208,788.00 | 0% | $      - |
| Loan to CMMS | $ 6,219,048.00 | 0% | $      - |
| Other | $  187,120.00 | 0% | $      - |
| Total | $ 9,094,382.00 | | $ 1,192,293.30 |

| CLAIMS | | | |
|---|---|---|---|
| Ad Valorem Tax Liens | | | $   106,164.41 |
| Pioneer Bank Secured Claim | | | $ 1,435,924.79 |
| Other Secured Claims | | | $   611,664.28 |
| Total | | | $ 2,153,753.48 |

| Funds Remaining | | | $      - |
|---|---|---|---|

Liquidation Analysis CMMS Labs, LLC

| ASSETS | Value Per MOR | Pct. Recovery | Recovery |
|---|---|---|---|
| Cash | $ 26,510.00 | 100% | $ 26,510.00 |
| Accounts Receivable | $ 277,428.00 | 25% | $ 69,357.00 |
| Other Current Assets | $ 7,881.00 | 0% | $ - |
| Total | $ 311,819.00 | | $ 95,867.00 |
| | | | |
| CLAIMS | | | |
| Ad Valorem Tax Liens | | | $ - |
| Pioneer Bank Secured Claim | | | $ 1,435,924.79 |
| Other Secured Claims | | | $ 163,292.00 |
| Total | | | $ 1,599,216.79 |
| | | | |
| Funds Remaining | | | $ - |

Liquidation Analysis Correctional Mobile Medical, LLC

| ASSETS | Value Per MOR | Pct. Recovery | Recovery |
|---|---|---|---|
| Cash | $ 9,752.00 | 100% | $ 9,752.00 |
| Accounts Receivable | $ 300,313.00 | 25% | $ 75,078.25 |
| Other Current Assets | $ 1,200.00 | 0% | $ - |
| Total | $ 311,265.00 | | $ 84,830.25 |
| | | | |
| CLAIMS | | | |
| Ad Valorem Tax Liens | | | $ - |
| Pioneer Bank Secured Claim | | | $ 1,435,924.79 |
| Other Secured Claims | | | $ 412,970.36 |
| Total | | | $ 1,848,895.15 |
| | | | |
| Funds Remaining | | | $ - |

Liquidation Analysis Combined

| ASSETS | Value Per MOR | Pct. Recovery | Recovery |
|---|---|---|---|
| Cash | $ 836,530.00 | 100% | $ 836,530.00 |
| Accounts Receivable | $ 2,077,271.00 | 25% | $ 519,317.75 |
| Other Current Assets | $ 17,281.00 | 0% | $ - |
| PPE | $ 171,428.00 | 10% | $ 17,142.80 |
| Investment in Subsidiary | $ 208,788.00 | 0% | $ - |
| Loan to CMMS | $ 6,219,048.00 | 0% | $ - |
| Other | $ 187,120.00 | 0% | $ - |
| Total | $ 9,717,466.00 | | $ 1,372,990.55 |

| CLAIMS | | | |
|---|---|---|---|
| Ad Valorem Tax Liens | | | $ 106,164.41 |
| Pioneer Bank Secured Claim | | | $ 1,435,924.79 |
| MCAs | | | $ 706,798.48 |
| Total | | | $ 2,248,887.68 |

| Funds Remaining | | | $ - |
|---|---|---|---|

| Creditor | CLASS | Consideration | Debtor | Amount | Payments | Balance | POC | POC Amount | Indicated Amount* |
|---|---|---|---|---|---|---|---|---|---|
| | | | **Exhibit D** | | | | | | |
| | | | **SCHEDULED** | | | | | | |
| Raquel Giangiacomo | 2 | Employee | Corridor | $ 1,339.96 | $0.00 | $1,339.96 | | | $1,339.96 |
| Redacted | 3 | Patient Refund | Corridor | $ 319.57 | $0.00 | $319.57 | | | $319.57 |
| Redacted | 3 | Patient Refund | Corridor | $ 566.01 | $0.00 | $556.01 | | | $556.01 |
| Redacted | 3 | Patient Refund | Corridor | $ 20.00 | $0.00 | $20.00 | | | $20.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 60.00 | $0.00 | $60.00 | | | $60.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 61.93 | $0.00 | $61.93 | | | $61.93 |
| Redacted | 3 | Patient Refund | Corridor | $ 11.81 | $0.00 | $11.81 | | | $11.81 |
| Redacted | 3 | Patient Refund | Corridor | $ 3,420.74 | $0.00 | $3,420.74 | | | $3,420.74 |
| Redacted | 3 | Patient Refund | Corridor, CMMS, CIS | $ 90.00 | $0.00 | $90.00 | | | $90.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 347.00 | $0.00 | $347.00 | | | $347.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 23.31 | $0.00 | $23.31 | | | $23.31 |
| Redacted | 3 | Patient Refund | Corridor | $ 5.91 | $0.00 | $5.91 | | | $5.91 |
| Redacted | 3 | Patient Refund | Corridor | $ 30.61 | $0.00 | $30.61 | | | $30.61 |
| Redacted | 3 | Patient Refund | Corridor | $ 42.16 | $0.00 | $42.16 | | | $42.16 |
| Redacted | 3 | Patient Refund | Corridor | $ 21.42 | $0.00 | $21.42 | | | $21.42 |
| Redacted | 3 | Patient Refund | Corridor | $ 3.99 | $0.00 | $3.99 | | | $3.99 |
| Redacted | 3 | Patient Refund | Corridor | $ 385.65 | $0.00 | $385.65 | | | $385.65 |
| Redacted | 3 | Patient Refund | Corridor | $ 12.28 | $0.00 | $12.28 | | | $12.28 |
| Redacted | 3 | Patient Refund | Corridor | $ 15.97 | $0.00 | $15.97 | | | $15.97 |
| Redacted | 3 | Patient Refund | Corridor | $ 12.01 | $0.00 | $12.01 | | | $12.01 |
| Redacted | 3 | Patient Refund | Corridor | $ 67.68 | $0.00 | $67.68 | | | $67.68 |
| Redacted | 3 | Patient Refund | Corridor | $ 10.00 | $0.00 | $10.00 | | | $10.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 26.10 | $0.00 | $26.10 | | | $26.10 |
| Redacted | 3 | Patient Refund | Corridor | $ 5.71 | $0.00 | $5.71 | | | $5.71 |
| Redacted | 3 | Patient Refund | Corridor | $ 414.47 | $0.00 | $414.47 | | | $414.47 |
| Redacted | 3 | Patient Refund | Corridor | $ 14.09 | $0.00 | $14.09 | | | $14.09 |
| Redacted | 3 | Patient Refund | Corridor | $ 59.01 | $0.00 | $59.01 | | | $59.01 |
| Redacted | 3 | Patient Refund | Corridor | $ 352.42 | $0.00 | $352.42 | | | $352.42 |
| Redacted | 3 | Patient Refund | Corridor | $ 25.84 | $0.00 | $25.84 | | | $25.84 |
| Redacted | 3 | Patient Refund | Corridor | $ 166.34 | $0.00 | $166.34 | | | $166.34 |
| Redacted | 3 | Patient Refund | Corridor | $ 15.43 | $0.00 | $15.43 | | | $15.43 |
| Redacted | 3 | Patient Refund | Corridor | $ 9.25 | $0.00 | $9.25 | | | $9.25 |
| Redacted | 3 | Patient Refund | Corridor | $ 341.50 | $0.00 | $341.50 | | | $341.50 |
| Redacted | 3 | Patient Refund | Corridor | $ 30.00 | $0.00 | $30.00 | | | $30.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 410.00 | $0.00 | $410.00 | | | $410.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 25.00 | $0.00 | $25.00 | | | $25.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 24.82 | $0.00 | $24.82 | | | $24.82 |
| Redacted | 3 | Patient Refund | Corridor | $ 4.66 | $0.00 | $4.66 | | | $4.66 |
| Redacted | 3 | Patient Refund | Corridor | $ 33.18 | $0.00 | $33.18 | | | $33.18 |
| Redacted | 3 | Patient Refund | Corridor | $ 1,060.00 | $0.00 | $1,060.00 | | | $1,060.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 57.21 | $0.00 | $57.21 | | | $57.21 |
| Redacted | 3 | Patient Refund | Corridor | $ 673.88 | $0.00 | $673.88 | | | $673.88 |
| Redacted | 3 | Patient Refund | Corridor | $ 61.00 | $0.00 | $61.00 | | | $61.00 |

| Name | # | Description | Schedule | Amount | | Amount | Rank | Amount |
|---|---|---|---|---|---|---|---|---|
| Redacted | 3 | Patient Refund | Corridor | $ 20.70 | $0.00 | $20.70 | | $20.70 |
| Redacted | 3 | Patient Refund | Corridor | $ 63.28 | $0.00 | $63.28 | | $63.28 |
| Redacted | 3 | Patient Refund | Corridor | $ 137.70 | $0.00 | $137.70 | | $137.70 |
| Redacted | 3 | Patient Refund | Corridor | $ 114.00 | $0.00 | $114.00 | | $114.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 445.00 | $0.00 | $445.00 | | $445.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 90.00 | $0.00 | $90.00 | | $90.00 |
| Redacted | 3 | Patient Refund | Corridor | $ 0.75 | $0.00 | $0.75 | | $0.75 |
| Redacted | 3 | Patient Refund | Corridor | $ 48.28 | $0.00 | $48.28 | | $48.28 |
| Redacted | 3 | Patient Refund | Corridor | $ 13.92 | $0.00 | $13.92 | | $13.92 |
| Redacted | 3 | Patient Refund | Corridor | $ 4,192.30 | $0.00 | $4,192.30 | | $4,192.30 |
| Redacted | 3 | Patient Refund | corridor | $ 179.10 | $0.00 | $179.10 | | $179.10 |
| Redacted | 3 | Patient Refund | Corridor | $ 34.11 | $0.00 | $34.11 | | $34.11 |
| Redacted | 3 | Patient Refund | Corridor | $ 8.49 | $0.00 | $8.49 | | $8.49 |
| Redacted | 3 | Patient Refund | Corridor | $ 45.00 | $0.00 | $45.00 | | $45.00 |
| Texas Comptroller of Public Accounts | 4 | Franchise Tax | CIS | $ 8,413.17 | $0.00 | $8,413.17 | 93 | $37,975.98 |
| Arlington ISD | 5 | Ad Valorem | Corridor | $ 2,882.55 | $0.00 | $2,882.55 | 14 | $1,960.21 |
| Bexar County Tax Collector | 5 | Property Tax | Corridor | $ 192.14 | $0.00 | $192.14 | | |
| City of Del Rio | 5 | Ad Valorem | Corridor | $ 57.31 | $57.31 | $0.00 | | |
| City of Larado-Tax | 5 | Ad Valorem | Corridor | $ 11.09 | $0.00 | $11.09 | | |
| City of Larado | 5 | Ad Valorem | CMS | | | | 19 | $11.09 |
| Harris County Tax | 5 | Ad Valorem | Corridor | $ 6,651.69 | $0.00 | $6,651.69 | 6 | $5,955.48 |
| Hays County Tax | 5 | Ad Valorem | Corridor | $ 90,624.87 | $0.00 | $90,624.87 | 1 | $37,334.99 |
| Ron Wright Tax Assessor | 5 | Taxes | Corridor | $ 3,748.02 | $0.00 | $3,748.02 | | |
| San Marcos CISD | 5 | | CMS | | | | 4 | 50,101.39 |
| Tarrant County Tax Collector | 5 | Ad Valorem | Corridor | $ 3,720.82 | $0.00 | $3,720.82 | 5 | 1,705.61 |
| Travis County | 5 | Ad Valorem | Corridor | $ 158.83 | $0.00 | $158.83 | 54 | 6,425.00 |
| Travis County | 5 | Taxes | Not Scheduled | | $0.00 | $0.00 | 105 | 193.78 |
| Webb County Tax Assessor | 5 | Ad Valorem | Corridor | $ 34.82 | $0.00 | $34.82 | | |
| Pioneer Bank | 6 | Loan Incl SBA | Corridor, CMMS, CIS | $ 2,205,666.67 | $5,769,741.88 | $1,435,924.79 | 91 | $2,267,929.05 |
| Bank United SBF | 7 | Loan | Corridor, CIS | $ 269,471.69 | $285,259.00 | $65,029.88 | 27.2 | $274,790.45 |
| Toyota Motor Credit | 8 | | CMS | | | | 62 | $5,856.55 |
| Toyota Motor Credit | 8 | | CMS | | | | 65 | $5,855.56 |
| Toyota Motor Credit | 8 | | CMS | | | | 66 | $5,782.54 |
| Toyota Motor Credit | 8 | | CMS | | | | 69 | $5,514.31 |
| Toyota Motor Credit | 8 | | CMS | | | | 70 | $5,784.12 |
| Toyota Motor Credit | 8 | | CMS | | | | 72 | $5,441.86 |
| Toyota Motor Credit | 8 | | CMS | | | | 73 | $9,628.68 |
| Toyota Motor Credit | 8 | | CMS | | | | 74 | $5,353.03 |
| Toyota Motor Credit | 8 | | CMS | | | | 76 | $5,856.56 |
| Toyota Motor Credit | 8 | | CMS | | | | 77 | $9,322.16 |
| Toyota Motor Credit | 8 | | CMS | | | | 78 | $6,385.83 |
| Toyota Motor Credit | 8 | | CMS | | | | 79 | $6,326.36 |
| Toyota Motor Credit | 8 | | CMS | | | | 81 | $6,326.36 |
| Toyota Motor Credit | 8 | | CMS | | | | 82 | $6,326.36 |
| Toyota Motor Credit | 8 | | CMS | | | | 85 | $5,355.03 |
| Toyota Motor Credit | 8 | | CMS | | | | 86 | $6,326.36 |
| Toyota Motor Credit | 8 | | CMS | | | | | $6,326.36 |
| Toyota Motor Credit | 8 | | CMS | | | | | $5,856.99 |
| Toyota Motor Credit | 8 | | CMS | | | | | $5,412.91 |
| Toyota Motor Credit | 8 | | CMS | | | | 89 | $9,322.16 |

| Debtor | # | Basis | Entity | Amount 1 | Amount 2 | Amount 3 | Extra | # | Amount 4 |
|---|---|---|---|---|---|---|---|---|---|
| Toyota Motor Credit | 8 | | CMS | | | | | | $1,220.92 |
| Toyota Motor Credit | 8 | | CMS | | | | | | $3,899.39 |
| Ford Motor Credit | 9 | | | | | | | | $10,689.92 |
| Great America Fin Svcs Corp | 10 | Equipment | Corridor, CMMS | $ 1,804,805.64 | $0.00 | $1,804,805.64 | | 39 | $219,684.18 |
| Great America Financial Services | 10 | Leases-Equipment | Corridor, CMMS | $ 180,408.38 | $0.00 | $180,408.38 | | | $180,408.38 |
| Sterling National Bank | 11 | Loan | Corridor | $ 678,520.53 | $41,500.00 | $637,020.53 | | 90 | $586,280.46 |
| Par Funding | 12 | MCA | Corridor | $ 483,432.30 | $0.00 | $483,432.30 | | 53 | $492,834.10 $ |
| 1st Merchant | 13 | MCA | Corridor, CMMS, CIS | $ 60,908.27 | $0.00 | $60,908.27 | | | $60,908.27 |
| Advanced Merchant Services | 13 | MCA | Corridor | $ 269,952.00 | $0.00 | $269,952.00 | | | $269,952.00 |
| Channel Partners Capital LLC | 13 | MCA | CMMS | $ 13,333.00 | $6,500.00 | $0.00 | | | $0.00 |
| EIN Capital | 13 | MCA | Corridor | | $0.00 | $0.00 | | | $0.00 |
| Everest Business Funding | 13 | MCA | Corridor | - | $0.00 | $0.00 | | | $0.00 |
| Green Capital | 13 | MCA | Corridor | | $0.00 | $0.00 | | | $0.00 |
| GTR Source LLC | 13 | MCA | Corridor, CMMS, CIS | $ 295,481.38 | $0.00 | $295,481.38 | | | $295,481.38 |
| High Speed Capital | 13 | MCA | Corridor, CMMS, CIS | $ 121,205.75 | $0.00 | $121,205.75 | | | $121,205.75 |
| Fora Financial | 14 | Uncompleted Settlement | Corridor | $ 117,377.00 | $0.00 | $117,377.00 | | 43 | $117,377.80 |
| Hop Capital | 14 | MCA | CIS | $ 64,974.00 | $0.00 | $54,974.00 | | 94 | $95,135.00 |
| Knight Capital Funding | 14 | MCA | Corridor | $ 160,858.88 | $0.00 | $160,858.88 | | 56 | $176,541.12 |
| On Deck Capital | 14 | MCA | Corridor, CMMS, CIS | $ 163,292.00 | $0.00 | $163,292.00 | | | $0.00 |
| QuarterSpot Inc. | 14 | MCA | Corridor, CIS | $ 312,247.36 | $0.00 | $312,247.36 | | 36 | $154,453.36 |
| Accushield LLC | 15 | Services | Corridor | $ 126.00 | $0.00 | $126.00 | | | $126.00 |
| ACPS-The Surgicenter | 15 | Misdeposit?? | Corridor | $ 232.36 | $0.00 | $232.36 | | | $232.36 |
| Affordix Data & Comm Services | 15 | Services | Corridor, CMMS | $ 1,008.54 | $0.00 | $1,008.54 | | | $1,008.54 |
| American Portable Diagnostics Assc. | 15 | Services | Corridor | $ 750.00 | $0.00 | $750.00 | | | $750.00 |
| American Proficiency Institute | 15 | Testing | CMMS | | $0.00 | $0.00 | | | $0.00 |
| Any Lab Now Ft Worth | 15 | Employee Testing | Corridor | $ 59.00 | $0.00 | $59.00 | | | $59.00 |
| AT&T Internet | 15 | Services | Corridor, CMMS | $ 58.10 | $58.10 | $0.00 | | | $0.00 |
| AT&T Mobility | 15 | Services | Corridor | $ 5,790.55 | $5,790.55 | $0.00 | | | $0.00 |
| Atmos Energy- 255 & 280 | 15 | Services | Corridor | $ 126.44 | $126.44 | $0.00 | | 28 | $355.43 |
| Balcones Shred | 15 | Services | Corridor | $ 816.00 | $0.00 | $1,196.00 | | | $1,196.00 |
| BioMerieux | 15 | Services | Corridor, CMMS | $ 3,132.97 | $0.00 | $3,132.97 | | 97 | $3,132.97 |
| Biz Doc, Inc | 15 | Services | Corridor | $ 1,337.59 | $0.00 | $4,104.83 | | | $4,104.83 |
| BizDoc, Inc-Dallas | 15 | Services | Corridor | $ 187.97 | $0.00 | $1,173.06 | | | $1,173.06 |
| Briarwood Group LTD | 15 | Lease | CMMS | $ 300.00 | $300.00 | $0.00 | | | $0.00 |
| Bridgestone America | 15 | Services | Corridor | $ 109.26 | $0.00 | $109.26 | | | $109.26 |
| Briggs Healthcare | 15 | Services | Corridor | $ 2,563.90 | $0.00 | $2,563.90 | | | $2,563.90 |
| Capshaw Capital | 15 | Lease | Corridor, CMMS | $ 800.00 | $0.00 | $800.00 | | | $800.00 |
| Century Link 2548 | 15 | Services | Corridor | $ 93.81 | $93.81 | $0.00 | $119.25 | 17 | $119.25 |
| Cepheid | 15 | Services | Corridor, CMMS | $ 1,620.00 | $0.00 | $1,620.00 | | | $1,620.00 |
| CitiCards (office depot) | 15 | Credit Card | Corridor | $ 8,743.26 | $0.00 | $1,967.49 | | | $1,967.49 |
| Clyde's Pest Control | 15 | Services | Corridor | $ 135.31 | $135.31 | $0.00 | | | $0.00 |
| Collimare LLC | 15 | Goods | Corridor | $ 112.05 | $0.00 | $112.05 | | | $112.05 |
| Commerce Bank-Enterprise MC | 15 | Car rentals | Corridor | $ 3,715.71 | $0.00 | $3,574.32 | | | $3,574.32 |
| Concentra | 15 | Employee Testing | Corridor | $ 128.00 | $0.00 | $128.00 | | | $128.00 |
| Copy Serv | 15 | Services | Corridor | $ 10.86 | $0.00 | $10.86 | | | $10.86 |
| Country Inn & Suites | 15 | Services | Corridor | $ 373.75 | $0.00 | $373.75 | | | $373.75 |
| Dan Millier Air Conditioning | 15 | Services | CMMS | $ 1,336.23 | $0.00 | $1,336.23 | | | $1,336.23 |
| Data Innovations | 15 | Services | CMMS | $ 810.01 | $0.00 | $810.01 | | | $810.01 |

|  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|
| Dell Financial Services | 15 | Computer lease | Corridor | $ 2,182.24 | $0.00 | $2,182.24 | 26 | $2,231.37 | $2,231.37 |
| Dell-DO6-Financial Services Payment PR | 15 | Goods | Corridor | $ 817.08 | $0.00 | $817.08 |  |  | $817.08 |
| Discount Tire | 15 | Services | Corridor | $ 1,762.53 | $0.00 | $1,762.53 |  |  | $1,762.53 |
| Dixieland South Texas Main & Rentals | 15 | Services | Corridor | $ 841.00 | $761.00 | $80.00 |  |  | $80.00 |
| Durton Drive 3,/44 LTD-Bearden Mgmt | 15 | Lease | Corridor | $ 11,241.22 | $11,241.22 | $0.00 |  |  | $0.00 |
| EMD Millipore | 15 | Services | Corridor | $ (4,828.64) | $0.00 | $0.00 |  |  | $0.00 |
| FP Mailing Solutions | 15 | Services | Corridor | $ 350.86 | $0.00 | $350.86 |  |  | $350.86 |
| Gulf Towers Houston LLC | 15 | Lease | Corridor | $ 973.00 | $973.00 | $0.00 |  |  | $0.00 |
| Interchange Solutions-Sales Now | 15 | Services | Corridor | $ 2,553.60 | $0.00 | $2,681.28 |  |  | $2,681.28 |
| Jaken Medical Inc | 15 | Services | Corridor | $ 1,587.12 | $0.00 | $2,462.36 |  |  | $2,462.36 |
| Lab Soft Inc | 15 | Services | CWMS | $ 1,710.00 | $0.00 | $1,710.00 |  |  | $1,710.00 |
| Lube Pro | 15 | Services | Corridor | $ 33.95 | $0.00 | $33.95 |  |  | $33.95 |
| Maverick Industrial | 15 | Services | Corridor | $ 228.96 | $0.00 | $228.96 |  |  | $228.96 |
| MedLink Imaging LLC | 15 | Equipment | Corridor | $ 2,600.00 | $0.00 | $2,600.00 |  |  | $2,600.00 |
| MedPost Urgent Care-Goliad | 15 | services | Corridor | $ 35.00 | $0.00 | $35.00 |  |  | $35.00 |
| Meritain Health | 15 | Insurance | Corridor | $ 187,027.87 | $887,727.82 | $54,000.00 | 41,42 | $281.45 | $281.45 |
| Michelle & Pratt Consultants | 15 | services | Corridor | $ 2,280.00 | $0.00 | $2,280.00 |  |  | $2,280.00 |
| Microbiologics | 15 | Services | CWMS | $ 165.15 | $0.00 | $165.15 |  |  | $165.15 |
| Monroe Brothers Paint & Body Inc. | 15 |  | CMS, CIS |  |  | $3,103.54 | 50 | $3,103.54 | $3,103.54 |
| Monroe Capital Management Advisors | 15 | Unknown | CMMS | $ - | $0.00 | $0.00 |  |  | $0.00 |
| National Mobile Xray | 15 | Services | Corridor | $ 340.00 | $0.00 | $340.00 |  |  | $340.00 |
| NextCare Urgent Care | 15 | Services | Corridor | $ 65.00 | $0.00 | $65.00 |  |  | $65.00 |
| Nextraq | 15 | Services | Corridor | $ (289.15) | $0.00 | $0.00 |  |  | $0.00 |
| NTTA | 15 | Services | Corridor | $ 364.21 | $364.21 | $0.00 |  |  | $0.00 |
| O.A.E. Software | 15 | Services | Corridor | $ 2,400.00 | $0.00 | $2,400.00 |  |  | $2,400.00 |
| Office Depot | 15 | Services | Corridor | $ 1,130.50 | $0.00 | $1,967.49 |  |  | $1,967.49 |
| O'Reilly Automotive | 15 | Services | Corridor | $ 307.99 | $0.00 | $1,640.63 |  |  | $1,640.63 |
| Pennzoil Pt Stop | 15 | Services | Corridor | $ 180.96 | $0.00 | $180.96 |  |  | $180.96 |
| Pitney Bowes Purchase Power | 15 | Services | Corridor | $ 2,011.97 | $0.00 | $2,099.50 | 31 | $2,337.25 | $2,337.25 |
| Pure Water Partners | 15 | Services | Corridor | $ 234.84 | $0.00 | $469.68 | 34 |  | $469.68 |
| Quill | 15 | Services | Corridor | $ 346.36 | $0.00 | $346.36 |  |  | $346.36 |
| RedAway | 15 | Services | Corridor, CWMS | $ 500.00 | $0.00 | $500.00 |  |  | $500.00 |
| Robert H Farias CPA | 15 | Services | Corridor | $ 55,000.00 | $0.00 | $0.00 |  |  | $0.00 |
| Sharp Business Systems Dept 1205 | 15 | Services | Corridor | $ 1,537.15 | $0.00 | $1,623.44 |  |  | $1,623.44 |
| Shred-It | 15 | services | CMMS | $ 1,783.99 | $0.00 | $1,783.99 |  |  | $1,783.99 |
| Sonolab Imaging Solutions | 15 | Services | Corridor | $ 18,300.40 | $26,098.44 | $0.00 |  |  | $0.00 |
| Sonoquick LLC | 15 | Services | Corridor | $ 24,960.00 | $32,460.00 | $0.00 |  |  | $0.00 |
| Southwest X-Ray Co | 15 | Services | Corridor | $ 1,677.89 | $0.00 | $1,677.89 | 20 | $1,679.89 | $1,679.89 |
| Sparklettes Water | 15 | Services | CWMS | $ 33.83 | $0.00 | $33.83 |  |  | $33.83 |
| SPBS Clinical Equipment Services | 15 | Services | CMMS | $ 556.36 | $0.00 | $556.36 |  |  | $556.36 |
| Specialty Metals | 15 | Services | Corridor | $ 200.00 | $0.00 | $200.00 |  |  | $200.00 |
| Sprint | 15 | Services | Corridor | $ 60.89 | $0.00 | $60.89 |  |  | $60.89 |
| Sir8 Training | 15 | Services | Corridor | $ 2,172.00 | $0.00 | $2,172.00 |  |  | $2,172.00 |
| Team Car Care dba Jiffy Lube | 15 | services | Corridor | $ 86.95 | $0.00 | $86.95 |  |  | $86.95 |
| Technology Two Inc | 15 | Services | Corridor | $ 106.00 | $0.00 | $106.00 |  |  | $106.00 |

| Name | Grp | Category | Provider | | | | Count | | |
|---|---|---|---|---|---|---|---|---|---|
| Texas Disposal systems | 15 | Services | Corridor | $ 1,153.30 | $0.00 | $1,153.30 | | | $1,153.30 |
| Texas Health & Racquet Club | 15 | Services | Corridor | $ 2,055.92 | $0.00 | $2,935.35 | | | $2,935.35 |
| Time Warner Cable | 15 | Services | CMMS | $ 2,509.44 | $0.00 | $2,509.44 | 12 | $753.08 | $753.08 |
| Time Warner Cable | 15 | Services | Corridor | $ 2,509.44 | $0.00 | $2,509.44 | 11 | $310.88 | $310.88 |
| Time Warner Cable Arl Fiber | 15 | Services | Corridor, CMMS | $ 1,758.64 | $0.00 | $231.30 | 13 | $231.30 | $231.30 |
| TransAmerica Life Ins Co | 15 | Services | Corridor | $ 620.82 | $620.82 | $0.00 | | | $0.00 |
| TXU Energy | 15 | Services | CMMS | $ 1,080.13 | $1,080.13 | $0.00 | | | $0.00 |
| U.S. Department of Health and Human Svcs | 15 | | | | | | 106 | $0.00 | $0.00 |
| Unruh Turner Burke & Frees | 15 | Services | Corridor | $ 3,427.00 | $0.00 | $3,427.00 | | | $3,427.00 |
| Voya | 15 | Services | Corridor | $ 227.91 | $227.91 | $0.00 | | | $0.00 |
| Woods Comfort Systems | 15 | Services | Corridor | $ 330.01 | $0.00 | $330.01 | | | $330.01 |
| You Name It Specialties Inc | 15 | Services | Corridor | $ 333.09 | $0.00 | $333.09 | | | $333.09 |
| Ace Funding Source LLC | 16 | Services  MCA | Corridor, CMMS, CIS | $ 104,625.00 | $0.00 | $104,625.00 | | | $104,625.00 |
| AFCO | 16 | Insurance | Corridor | $ 13,387.96 | $13,387.96 | $0.00 | 15 | $21,447.99 | $21,447.99 |
| Alphagraphics | 16 | Services | Corridor, CMMS | $ 21,002.62 | $0.00 | $21,002.62 | | | $21,002.62 |
| American Express | 16 | Credit Card | Corridor | $ 107,410.11 | $0.00 | $107,410.11 | | | $107,410.11 |
| Change Healthcare | 16 | Services | Corridor, CMMS | $ 23,717.26 | $0.00 | $65,173.78 | 18,98 | $5,733.71 | $65,173.78 |
| Channel Health | 16 | Services | Corridor, CMMS | $ 2,500.00 | $0.00 | $12,000.00 | | | $12,000.00 |
| Aspyra LLC | 16 | Services | Corridor, CMMS | $ 8,728.28 | $0.00 | $8,728.28 | | | $8,728.28 |
| Baker Donelson PC | 16 | Legal | Corridor | $ 4,375.00 | $0.00 | $4,375.00 | 49 | $18,552.00 | $18,552.00 |
| Cherub Reeves | 16 | Loan | Corridor | $ 216,354.00 | $0.00 | $216,354.00 | | | $216,354.00 |
| Cherub Reeves (IV for Jonah Nelson | 16 | Loan | Corridor | $ 80,000.00 | $0.00 | $80,000.00 | | | $80,000.00 |
| Best Care Lab | 16 | Services | Corridor | $ 19,000.00 | $0.00 | $19,000.00 | 9 | $19,000.00 | $19,000.00 |
| Christus Santa Rosa | 16 | Services | CMMS | $ 8,574.45 | $0.00 | $41,607.00 | | | $41,607.00 |
| Bio Rad Laboratories | 16 | Services | Corridor | $ 80,000.00 | $0.00 | $80,000.00 | 59 | $500,000.00 | $500,000.00 |
| Centurylink | 16 | Services | Corridor | $ 10,685.41 | $0.00 | $10,685.41 | | | $10,685.41 |
| Cirrus DX Inc | 16 | Goods | Corridor, CMMS | $ 1,828,401.78 | $0.00 | $1,828,401.78 | 61 | $1,842,082.78 | $1,842,082.78 |
| Clinical Pathology Labs | 16 | Services | CMMS | $ 269,014.26 | $0.00 | $408,422.34 | | | $408,422.34 |
| Corl Nelson | 16 | Loan | Corridor | $ 80,000.00 | $0.00 | $80,000.00 | | | $80,000.00 |
| Covenant Health Systems | 16 | Services | CMMS | $ 1,461.75 | $0.00 | $7,059.11 | | | $7,059.11 |
| CRCA | 16 | Employee Testing | Corridor | $ 6,818.50 | $0.00 | $6,818.50 | | | $6,818.50 |
| Emergent Connect | 16 | Software | Corridor | $ 140,594.50 | $20,000.00 | $120,594.50 | 52 | $157,437.50 | $157,437.50 |
| Enterprise fleet Management | 16 | Executory Contract | Corridor | $ 79,038.35 | $0.00 | $99,046.17 | | | $99,046.17 |
| Fisher Healthcare | 16 | Services | CMMS | $ 785.96 | $0.00 | $19,294.73 | | | $19,294.73 |
| GoVoip | 16 | Services | Corridor | $ 5,263.78 | $0.00 | $5,263.78 | | | $5,263.78 |
| Grande Communications Network | 16 | Services | Corridor | $ 6,069.69 | $0.00 | $6,069.69 | | | $6,069.69 |
| Dialpad | 16 | Services | Corridor, CMMS | $ 12,430.06 | $0.00 | $12,430.06 | | | $12,430.06 |
| Dell Financial Services | 16 | Computer Lease | Corridor | $ 4,569.83 | $0.00 | $4,569.83 | 30 | $10,532.33 | $10,532.33 |
| Del Sol Medical Center | 16 | Services | CMMS | $ 11,884.83 | $0.00 | $14,868.41 | | | $14,868.41 |
| De Lage Landen Fin Svcs Inc | 16 | Services | Corridor | $ 499,167.09 | $0.00 | $499,167.09 | 96 | $6,867.42 | $5,857.42 |
| Efax.com | 16 | Services | Corridor | $ 5,000.00 | $0.00 | $7,500.00 | | | $7,500.00 |
| Henry Scheln | 16 | Services | Corridor, CMMS | $ 276,068.77 | $0.00 | $276,068.77 | 58 | $303,203.75 | $303,203.75 |
| Konica Minolta Medical Imaging | 16 | Services | Corridor | $ 27,262.61 | $0.00 | $27,262.61 | | | $27,262.61 |
| La Quinta Inn Amarillo Airport | 16 | Services | Corridor | $ 455.55 | $0.00 | $456.55 | | | $456.55 |
| La Quinta Inn Arlington South | 16 | Services | Corridor | $ 3,028.81 | $0.00 | $3,028.81 | 2 | $12,107.29 | $12,107.29 |
| La Quinta Inn Arlington South | 16 | Services | Corridor | | | | | | |
| La Quinta Inn Austin Airport | 16 | Services | Corridor | $ 297.10 | $0.00 | $252.10 | | | $252.10 |
| La Quinta Inn austin N McPac | 16 | Services | Corridor | $ 250.70 | $0.00 | $250.70 | | | $250.70 |

| Creditor | | Category | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| La Quinta Inn Austin Southwest | 16 | Services | Corridor | $ | 616.40 | $0.00 | $616.40 | | |
| La Quinta Inn Brownwood | 16 | Services | Corridor | $ | 959.37 | $0.00 | $959.37 | | |
| La Quinta Inn Cedar Park | 16 | Services | Corridor | $ | 248.52 | $0.00 | $248.52 | | |
| La Quinta Inn El Paso | 16 | Services | Corridor | $ | 1,797.78 | $0.00 | $1,797.78 | | |
| La Quinta Inn Galveston | 16 | Services | Corridor | $ | 534.75 | $0.00 | $534.75 | | |
| La Quinta Inn Houston Hobby | 16 | Services | Corridor | $ | 825.40 | $0.00 | $825.40 | | |
| La Quinta Inn Jacksonville | 16 | Services | Corridor | $ | 241.05 | $0.00 | $241.05 | | |
| La Quinta Inn Laredo | 16 | Services | Corridor | $ | 389.88 | $0.00 | $389.88 | | |
| La Quinta Inn Lawton | 16 | Services | Corridor | $ | 359.54 | $0.00 | $359.54 | | |
| La Quinta Inn Longview | 16 | Services | Corridor | $ | 218.50 | $0.00 | $218.50 | | |
| La Quinta Inn Lubbock | 16 | Services | Corridor | $ | 98.31 | $0.00 | $98.31 | | |
| La Quinta Inn Lubbock North | 16 | Services | Corridor | $ | 1,711.42 | $0.00 | $1,711.42 | | |
| La Quinta Inn Paris | 16 | Services | Corridor | $ | 565.00 | $0.00 | $565.00 | | |
| La Quinta Inn S. Grand Prarie | 16 | Services | Corridor | $ | 1,393.29 | $0.00 | $1,393.29 | | |
| La Quinta Inn SA Airport | 16 | Services | Corridor | $ | 4,932.90 | $0.00 | $4,932.90 | | |
| La Quinta Inn Tyler University | 16 | Services | Corridor | $ | 721.45 | $0.00 | $721.45 | | |
| Lark Group & Associates LLC | 16 | Services | Corridor | $ | 12,250.00 | $0.00 | $12,250.00 | | |
| Liason Technologies Inc | 16 | Services | Corridor | $ | 21,173.70 | $0.00 | $21,173.70 | | |
| Lois Goodman | 16 | Loan | Corridor | $ | 370,000.00 | $0.00 | $370,000.00 | | |
| Luce Evans Law PC | 16 | Services | Corridor | $ | 24,000.00 | $0.00 | $24,000.00 | | |
| Mary Margaret Maggie Nelson | 16 | Loan | Corridor | $ | 21,700.00 | $0.00 | $21,700.00 | | |
| McKesson Medical-Surgical Inc. | 16 | | CMS | $ | | | $28,459.92 | 99 | $28,459.92 |
| Mercedes Medical | 16 | Services | CMMS | $ | 48,668.36 | $0.00 | $48,668.36 | 38 | $48,668.36 |
| Meridian Technology | 16 | Services | Corridor | $ | 809,412.75 | $0.00 | $809,412.75 | 88 | $977,873.57 |
| Mercy X-Ray | 16 | Services | Corridor | $ | 12,841.20 | $0.00 | $13,659.79 | 15 | $12,841.20 |
| Met-Life (South) | 16 | Life Insurance | Corridor | $ | 40,471.98 | $0.00 | $40,471.98 | | $40,471.98 |
| Metro Uniform/Scrubs | 16 | Services | Corridor | $ | 3,451.10 | $0.00 | $3,451.10 | | $3,451.10 |
| Milton Technologies | 16 | Services | Corridor | $ | 2,680.04 | $0.00 | $5,129.04 | | $5,129.04 |
| Ober Kaler Attys at Law | 16 | Services | Corridor | $ | 14,177.00 | $0.00 | $14,177.00 | | $14,177.00 |
| One America/AUU | 16 | Retirement Plan | Corridor | $ | 73,037.40 | $57,661.60 | $15,375.80 | | $15,375.80 |
| Ortho Clinical Diagnostics | 16 | Services | Corridor, CMMS | $ | 80,003.16 | $0.00 | $80,003.16 | 92 | $287,865.27 |
| Peripheral Vascular Associates | 16 | Services | Corridor | $ | 135,900.00 | $183,350.00 | $0.00 | 80 | $163,400.00 |
| Principal | 16 | Insurance | Corridor | $ | 31,799.40 | $31,799.40 | $0.00 | | $0.00 |
| Quest Diagnostics-CMMS Lab | 16 | Services | Corridor, CMMS | $ | 404,935.58 | $0.00 | $404,935.58 | 103 | $396,078.01 |
| Quidel Corp. | 16 | Services | CMMS | $ | 15,366.56 | $0.00 | $15,366.56 | | $15,366.56 |
| Radiology Assoc PA | 16 | Services | Corridor | $ | 133,821.00 | $0.00 | $133,821.00 | 44 | $39,000.00 |
| Rapid Radiology | 16 | Services | Corridor | $ | 424,277.18 | $423,814.00 | $0.00 | 51 | $568,844.97 |
| Salesforce.com Inc | 16 | Services | Corridor | $ | 68,743.70 | $0.00 | $68,743.70 | | $68,743.70 |
| Scanlan, Buckle & Young PC | 16 | Services | Corridor | $ | 7,945.33 | $0.00 | $4,774.03 | | $4,774.03 |
| Screening for Life | 16 | Services | Corridor | $ | 14,792.50 | $0.00 | $15,615.00 | | $15,615.00 |
| Sekisui Diagnostics LLC | 16 | Services | CMMS | $ | 6,227.20 | $0.00 | $8,100.57 | | $8,100.57 |
| Sherilyn Carlton | 16 | Consulting | Corridor | $ | 14,411.64 | $0.00 | $14,411.64 | | $14,411.64 |
| Siemens Healthcare diagnostics | 16 | Services | CMMS | $ | 16,388.32 | $0.00 | $18,915.32 | 101, 102 | $19,965.32 |
| Southwest Airlines Cargo | 16 | Services | CMMS | $ | 1,677.89 | $0.00 | $26,875.10 | | $26,875.10 |
| Stericycle Inc. | 16 | Services | CMMS | $ | 18,882.31 | $0.00 | $18,882.31 | | $18,882.31 |
| Strategic Growth Inc. | 16 | Services | Corridor | $ | 12,514.53 | $0.00 | $12,514.53 | | $12,514.53 |
| Sysmex | 16 | Services | Cmms | $ | 33,120.45 | $0.00 | $33,120.45 | | $33,120.45 |
| THCA | 16 | services | Corridor, CMMS | $ | 13,000.00 | $0.00 | $13,000.00 | | $13,000.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| The Lane Law Firm | 16 | Services | Corridor | $ 4,500.00 | $0.00 | $4,500.00 | 57 | $79,638.34 |
| TouchstoneNet Inc. | 16 | Services | Corridor, CMMS | $ 9,000.00 | $0.00 | $18,000.00 | | $18,000.00 |
| Travelers | 16 | Services | Corridor, CMMS | $ 5,348.07 | $0.00 | $101,430.15 | 63 | $101,430.15 |
| Ultrascan Mobile Imaging LLC | 16 | | CMS | | | $44,000.00 | 23 | $44,000.00 |
| United Healthcare Insurance | 16 | Services | Corridor | $ 85,649.90 | $0.00 | $85,649.90 | 3,10 | $105,630.53 |
| University Health System | 16 | Services | CMMS | $ 73,177.00 | $0.00 | $73,177.00 | | $73,177.00 |
| Valero Marketing & Supply Co. | 16 | Services | Corridor | $ 81,669.49 | $0.00 | $81,669.49 | | $81,669.49 |
| Verizon Wireless | 16 | Services | Corridor | | $0.00 | $9,432.63 | 34, 32 | $24,526.44 |
| Wells Fargo Bank | 16 | Credit Card | Corridor | $ 73,223.62 | $0.00 | $73,223.62 | 22 | $73,191.45 |
| Cherub Reeves | 17 | Stock Buy Back | CIS | $ 580,000.00 | $0.00 | $580,000.00 | | |
| Cherub Reeves | 17 | Stock Buy Back | Corridor | $ 2,450,000.00 | $0.00 | $2,450,000.00 | | |
| Susan Reeves | 17 | Stock Repurchase | Corridor | $ 180,768.00 | $0.00 | $180,768.00 | | |
| Corridor Medical Services Inc | 18 | loan | CMMS | $ 6,219,047.76 | $0.00 | $6,219,047.76 | | |

*—Debtor reserves the right to object to any claim listed unless the Debtor scheduled the claim as undisputed.